THE STATE v. HAYES, *Appellant.*

DIVISION TWO.

1. **Criminal Law**: BURGLARY AND LARCENY: FELONIOUS INTENT: DETECTIVE. The defendant proposed to H. the burglary and larceny of a storehouse. H. consented thereto but notified the authorities. Defendant and H. went together to the building and defendant raised a window and assisted H. in getting into the building. H. handed out a piece of bacon to defendant and was assisted by him in getting out. The defendant took the bacon and was carrying it away when arrested. *Held* that the defendant could not be convicted of burglary and larceny, unless H. broke into and entered the building with a felonious intent, and the defendant was aiding and abetting him with the same intent.

2. ———: FELONIOUS INTENT. Whether H. entered the store with a felonious intent was a question for the jury.

3. ———: ———: PETIT LARCENY. The defendant might be convicted of petit larceny if the act of H. lacked the necessary intent to make the crime a felony.

*Appeal from Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

*A. C. Eubanks* and *A. D. Christy* for appellant.

It is clear from the evidence that there was a plan agreed upon to entrap defendant laid by the witnesses Payne, Hill and Van Wye. Hill was to bring with him the defendant Hayes, and Hill was acting as the agent of the "committee" and A. Payne, the proprietor of the store, and, if this was true, then there was no burglary committed, and the court erred in not giving the instructions prayed by defendant and refused by the court. *Rex v. Johnson*, Car. & M. 218; *Rex v. Eggington*, 2 B. & P. 508; 2 Leach [4 Ed.] 913; 2 East P. C.

494, 666 ; 1 Bishop's Criminal Law [7 Ed.] sec. 262.   If Hill raised the outer window and entered said building and handed out said bacon to defendant, as testified by the witnesses both for and against the defendant, and he did so by the consent or agency of the proprietor Payne, then he was not guilty of either burglary or larceny in so doing, and hence the defendant could not be guilty of either, by being present and assisting Hill to do said acts, and the court should have so instructed the jury ; and even if the instructions prayed by defendant were vicious or wrong then it was the duty of the court to instruct the jury properly, so as to cover the whole case.  *State v. Stonum*, 62 Mo. 596; *State v. Branstetter*, 65 Mo. 149.

*John M. Wood*, Attorney General, for the State.

(1)   The indictment charges burglary in the second degree and larceny.   It is in one count, and is drawn under sections 1298 and 1301, Revised Statutes, 1879, sections 3526 and 3529, Revised Statutes, 1889, and properly charges the offense.   *State v. Henley*, 30 Mo. 509; *State v. Turner*, 63 Mo. 436; *State v. Bruffey*, 75 Mo. 389; *State v. Beckworth*, 68 Mo. 83.   (2)   The names of the owners of the store were sufficiently set out.   Sections 1820 and 1821, Revised Statutes, 1879 ; *State v. Barker*, 64 Mo. 282; *State v. Bibb*, 68 Mo. 286 ; *State v. Mohr*, 68 Mo. 303.   (3)   The court in its instructions properly declared the law to the jury.   *First.*   Defendant was guilty if he aided or in any way assisted Hill in the commission of the offense, although he did not enter the building.   *State v. Owens*, 79 Mo. 619 ; *State v. Hollenscheit*, 61 Mo. 302, and authorities cited ; *State v. Testerman*, 68 Mo. 413; *State v. Phillips & Ross*, 24 Mo. 475; *State v. Miller*, 67 Mo. 607; *State v. Cox*, 65 Mo. 29 ; *State v. Miller*, 100 Mo. 606; R. S. 1889, sec. 3944.   *Second.*   Furnishing facilities or temptations in order to entrap a wrong-doer is not a consent in law.

Mr. Bishop says : " A common case is where burglars, intending to break into a house and steal, tempt the occupant's servant to assist them ; and, after communicating the fact to his master, he is authorized to join them in appearance. For what burglars personally do under such an arrangement, they are by all opinions responsible." 1 Bish. Crim. Law, sec. 262. The defendant was a principal in the first degree under our statute, and, if he acted from a felonious intent, was guilty. *Third.* As to what constitutes a breaking, see *State v. Hicox*, 83 Mo. 538. *Fourth.* The general instructions were proper. *State v. Butterfield*, 75 Mo. 297 ; *State v. Owens*, 79 Mo. 619; *State v. Hicox, supra;* R. S. 1889, secs. 3526 and 3529.

THOMAS, J.—The defendant appeals from a sentence of five years' imprisonment in the penitentiary for burglary and larceny, by the circuit court of Sullivan county, November 23, 1887.

The evidence shows that A. Payne & Son kept a general store in Boynton, Sullivan county, in 1886, and that on the night of June 1, 1886, Addison Payne, Jr., one of the members of the firm of A. Payne & Son, and Enoch Van Wye, Frank Van Wye, James Yardley, Sherman Van Wye and John E. Senate secreted themselves in and near the storehouse of said Payne & Son for the purpose of capturing defendant and one Wm. Hill, if they should break into the store. About eleven or twelve o'clock of that night defendant and Hill came, sat down on the well-curb and talked a short time, and then went to a window of the warehouse attached to the store. Defendant raised the window about six inches, when Hill helped him break the catch and raised the window so a man could go in. Defendant assisted Hill in through the window. The latter handed out to the former a piece of bacon (side meat), weighing forty-five pounds. Defendant asked that more meat be

handed out, but this was all that was taken. Defend-
ant then assisted Hill out of the window and picked up
the meat, which was in a gunny-sack, and they both
started off. When they got fifteen or twenty steps
away, they were halted and some shots were fired. They
both ran, and the defendant threw the meat down, and
was captured a short distance from the store. He
denied being at the store. Hill was not arrested at all.
Hill was the step-son of A. Payne, Sr., and the half
brother of A. Payne, Jr.

It further appears that defendant, about a week
before the alleged burglary, proposed to Hill to go with
him and break into and rob Payne's store. Hill noti-
fied "Enoch Van Wye and John E. Senate of the anti-
horse thief association of Boynton, Missouri, of Hayes'
proposition." On the night of June 1, 1886, Hill met
defendant about half a mile from the store, whence they
went and broke in, as above stated. A. Payne was not
sworn as a witness, but A. Payne, Jr., one of the pro-
prietors of the store, testified that he watched the store
that night, expecting that defendant and Hill would
come, break into it and steal, but that he gave no con-
sent for them to enter the store. He had been informed
by Van Wye that these parties were expected there
that night, and he, with others, watched to capture
them if they did come. Frank Van Wye and James
Yardley testified that they had been informed by Enoch
Van Wye and John E. Senate that defendant and Hill
were expected there that night, and they guarded the
store to capture them if they did come.

The defendant called Enoch Van Wye and Senate
as witnesses, who corroborated the state's witnesses in
all essential particulars. Defendant also read the depo-
sition of Wm. Hill, who had moved to Kansas in the
meantime. Hill stated in substance that defendant
proposed to him to rob the store in question about a
week before June 1, and he met defendant and they
went and broke into it as stated above. He informed

Enoch Van Wye and Senate of defendant's proposition. He said the Paynes did not consent for him to enter the store. He testified as follows:

"*Q.* Who first proposed to go and rob the store in question? *A.* Defendant.

" *Q.* What was your object in going to the store in question with defendant Hayes? *A.* My object was to let the anti-horse thief association catch him burglarizing and robbing the store, as he had the reputation of being a desperate character."

The only question of importance before us grows out of the instructions of the court to the jury. The court gave a lengthy charge to the jury, and refused several declarations of law asked by defendant. It will not be necessary, however, to present the question involved, to do more than copy the following instruction given by the court: "The jury are further instructed that William Hill is not on trial in this case, and that, although the jury may believe from the evidence that said Hill did not break and enter the storehouse of A. Payne & Son with the felonious intent to steal therefrom, yet, if they further believe from the evidence beyond a reasonable doubt that the defendant was present and assisted said Hill in breaking and entering said store and taking therefrom a side of meat of any value whatever, with the felonious intent to convert said meat to his own use, then in that case the defendant is guilty of burglary, and the jury ought to so find."

It will be seen the trial court told the jury in this instruction that defendant was guilty of burglary, if he, with a felonious intent, assisted and aided Hill to enter the building, notwithstanding Hill himself may have had no such intent. In this we think the court erred. One cannot read this record without being convinced beyond a reasonable doubt that Hill did not enter the warehouse with intent to steal. He was the step-son of the senior, and the half brother of the junior, member of

the firm of A. Payne & Son, and all the evidence shows that he engaged in the enterprise for the sole purpose of enabling the parties on guard to capture the defendant, and that this purpose on his part was well known to the owners of the store. We may assume then, for the sake of the argument, that Hill committed no crime in entering the wareroom.

The act of Hill, however, was by the instruction of the court imputed to defendant. This act, according to the theory of the instructions, so far as Hill was concerned, was not a criminal act, but when it was imputed to defendant it became criminal, because of the latter's felonious intent. This would probably be true if Hill had acted under the *control* and *compulsion* of defendant, and as his passive and submissive agent.

But he was not a *passive agent* in this transaction. He was an active one. He acted of his own volition. He did not raise the window and enter the building with intent to commit crime, but simply to entrap defendant in the commission of crime, and have him captured. Judge BREWER sets this idea in a very clear light in *State v. Jansen*, 22 Kan. 498. He says: "The act of a detective may, perhaps, be not imputable to the defendant, as there is a want of community of motive. The one has a criminal intent, while the other is seeking the discovery and punishment of crime." Where the owner learns that his property is to be stolen, he may employ detectives and decoys to catch the thief. And we can do no better than to quote, again, from Judge BREWER, in the case above cited, as to the relation of the acts of detectives and the thief, when a crime is alleged to have been committed by the two. He says: "Where each of the overt acts going to make up the crime charged is personally done by the defendant, and with criminal intent, his guilt is complete, no matter what motives may prompt, or what acts done by the party who is with him, and apparently assisting him. Counsel have

cited and commented upon several cases in which detectives figured, and in which defendants were adjudged guiltless of the crimes charged. But this feature distinguishes them, that *some act* essential to the crime charged was in fact done by the detective, and not by the defendant; and, this act not being imputable to the defendant, the latter's guilt was not made out. The intent and act must combine; and all the elements of the act must exist and be imputable to the defendant."

Applying the principle here announced to the case at bar, we find that defendant did not commit *every overt act* that went to make up the crime. He did not enter the warehouse, either actually or constructively, and hence he did not commit the crime of burglary, no matter what his intent was, it clearly appearing that Hill was guilty of no crime. To make defendant responsible for the acts of Hill, they must have had a common motive and common design. The design and the motives of the two men were not only distinct, but dissimilar, even antagonistic. In support of the doctrine announced in the *Jansen case, supra,* which seems eminently just and humane, and in support of the rule we have applied in this case, we cite *Speiden v. State,* 30 Am. Rep. 126, and cases cited in principal case and note; 1 Bish. C. L., sec. 262, and cases cited; 1 Whart. Crim. Law, secs. 149, 766, 770 and 919, and cases cited; Art. in 25 Alb. Law Jour. 184, and cases cited.

These citations sufficiently show the relation a detective or decoy bears to the alleged criminal and the criminal act. There is a feeling in society, and, indeed, inheres in our very nature, against detective methods in the discovery and punishment of crime. These methods may be often necessary, and in extreme cases commendable, but yet the sentiment of mankind is against them. And why should it not be? Hill testified, in this case, that a long time prior to the alleged burglary, defendant requested him to join him in a general scheme to steal, and, about a week prior thereto, he

The State v. Hayes.

suggested the crime with which he was charged and of which he was convicted. What was Hill's plain duty, under the circumstances, as a citizen and neighbor? It was to condemn the project, and in the strongest and most emphatic terms possible. A courageous and indignant denunciation of the suggestion, at the time, might have turned defendant into the path of honesty, and it is almost certain this case would never have been in court. He betrayed the defendant. He made the defendant believe he was engaging in the burglary and theft, whereas he was simply engaged in it to capture and convict the defendant. The fact that defendant may have been regarded as an old offender can be no excuse, much less a justification, for Hill's conduct. If he was an old offender, the greater the reason there would seem to be why he should not be actively assisted and encouraged in the commission of a new crime, which could in no way throw light on his past offenses. "Human nature is frail enough at best, and requires no encouragement in wrong-doing. If we cannot assist another, and prevent him from violating the laws of the land, we, at least, should abstain from any active efforts in the way of leading him into temptation. Desire to commit crime, and opportunities for the commission thereof, would seem sufficiently general and numerous, and no special efforts would seem necessary in the way of encouragement or assistance in that direction." *Saunders v. People*, 38 Mich. 218.

Hill committed no crime and intended to commit none, but he played a false part. He seemed to be what he was not in fact. And, deep down in the hearts of all right-thinking men and women, there is a feeling against such conduct as his. These remarks are made to show the injustice of imputing to defendant the acts of Hill done under such circumstances and actuated by such motives. Bishop in his work on criminal law, section 262, says: "If a man suspects that an offense is to be committed, and, instead of taking precautions

against it, sets a watch and detects and arrests the offenders, he does not thereby consent to their conduct or furnish them any excuse." In such case he remains passive, and the offenders do every *overt act* necessary to constitute the crime. That is not like this case. Here Hill met defendant a half mile from the store. They proceeded to the place and sat down on the well curb and talked awhile. They then went to the window and Hill entered the house while defendant stood on the outside. He did not commit the *overt act* of entering the wareroom and stealing, and Hill's act, not being criminal, cannot be imputed to defendant as a criminal act on the ground that he supposed Hill was in fact stealing.

Our ruling is that defendant cannot be convicted of burglary and larceny, unless he committed the crimes himself, or was present aiding and abetting another in their commission, that other acting with a felonious intent. The court should instruct the jury that if Hill broke into and entered the wareroom with a felonious intent and defendant was present aiding him with the same intent then he is guilty, but if Hill entered the room with no design to steal but simply to entrap defendant and capture him in the commission of crime and defendant did not enter the room himself, then he is not guilty of burglary and larceny as charged. He may be found guilty, however, of petit larceny, in taking and removing the bacon after it was handed to him. This overt act he did in fact commit. And, while he may not be guilty of the burglary or grand larceny accompanying a burglary, yet he may be convicted of that which he does commit. *Regina v. Johnson*, 41 Eng. Com. B. 123; *Rex v. Egginton*, 2 B. & P. 508; 2 East P. C. 666-7.

Indeed, we think this is the only crime he did commit. But it is a question of fact whether Hill entered the store with a felonious intent or not, to be submitted to and determined by the jury, and, while the court

should submit this question to the jury, it should also submit the other hypothesis and that is, if Hill committed no crime and defendant did not enter the room, then, whether defendant was, guilty of petit larceny in taking and removing the meat with intent to steal it after it was handed out to him. As this case will have to be retried we will remark that, if the court should use the word "felonious" in the instructions, it should define it.

The judgment is reversed, and the cause remanded for new trial. All of this division concur.