## THE STATE v. ADOLPH WAGHALTER, Appellant.

### Division Two, November 17, 1903.

1. **Larceny:** CONSENT OF OWNER. If the owner of goods consents to the taking of them by another, though only for the purpose of entrapping and prosecuting the intending thief, his consent prevents the taking from being larceny.

2. **Receiving Stolen Goods:** NO LARCENY: CONSENT: DETECTIVE IN DISGUISE. A box of goods was taken from a railroad company, the owner, by a detective who at the time was the agent of and in the employment of said company, and the said taking by him was with the full knowledge and consent of said railroad company, and in pursuance of a previous arrangement between the railroad company and said agent, to entrap the driver of a transfer wagon, and the defendant, who was suspected of receiving goods stolen from the company. The goods were delivered to the driver by said employee, who was not known to be a detective by the driver, and although he suspected at the time that the goods were stolen or being stolen by said agent, upon being requested and persuaded by the detective to so do, the driver conveyed the goods to defendant's store. *Held,* that the taking was not felonious, and there having been no larceny defendant could not be guilty of receiving stolen goods.

3. ———: ———: ———: OWNERSHIP. The ownership of the stolen goods in the railroads was established by an allegation in the indictment charging it to be the owner.

4. ———: ENCOURAGEMENT OF CRIME. The court condemns the conduct of a detective in actually encouraging the commission of a crime in order to apprehend an offender.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas,* Judge.

REVERSED.

*Thos. B. Harvey* for appellant; *S. S. Bass* of counsel.

(1)  It was error to admit proof of statements made by Joseph Mack. The court and the prosecuting attorney were clearly mistaken in holding that the law permits a statement of the thief, made in the absence of defendant and not under circumstances binding on him, to be introduced against the receiver for the purpose of proving that the property was stolen. Such evidence is clearly hearsay. The case referred to by the circuit attorney, to-wit, State v. Smith, 37 Mo. 58, does seem, on casual reading, to hold as he stated; and in the case of State v. Sweeten, 75 Mo. App. 127, the Kansas City Court of Appeals was misled by the awkward wording of the opinion in State v. Smith, supra. But very recently in the case of State v. Levy, 168 Mo. 521, this court has reviewed the two aforesaid cases and reversed them in so far as they hold that the statement of a thief is competent to prove that the property was stolen. But even if the statements of Mack had been made in the presence of the defendant, yet he being under arrest was in no position to be called upon to reply. State v. Howard, 102 Mo. 148; State v. Mullins, 101 Mo. 517; State v. Murray, 126 Mo. 616. (2)   The court erred in rejecting defendant's offer of the duly authenticated record of the Illinois court and other proof to show that under the laws and adjudications of said State, the acts of Joseph Mack did not constitute larceny. Sec. 2362, Revised Statutes 1899, provides that if a person steals property in another State and brings it into this State, ''he may be punished for larceny in the same manner as if such property had been feloniously stolen or taken in this State,'' etc. By the terms of this statute, whether property taken in another State and brought into this can be characterized as stolen property, depends upon whether, under the laws of the other State, the taking constituted larceny. It has been expressly decided that the acquittal of the alleged thief necessitates the acquittal of the alleged receiver. State v. Antoine, 42 La. Ann. 945; Reg. v.

Streeter, 19 Cox. Cr. Cases 570. (3) Appellant's demurrer, offered at the close of the State's case, should have been given on one of the grounds assigned therein, to-wit, that the property alleged to have been received by the appellant from Mack was not stolen, it having been delivered to Mack by Brown, the detective and agent of and for the owner, the said Brown having directed and induced Mack to take said property and deliver it to the appellant. Clark's Crim. Law, p. 260; 1 Bish. New Cr. Law, sec. 263; Rapalje on Larceny, sec. 224; Hughes' Cr. Law and Proc., sec. 2428; Love v. People, 160 Ill. 508; People v. McCord, 76 Mich. 200; Adams v. State, 40 Ala. 234; Connor v. People, 18 Colo. 373; Williams v. State, 55 Ga. 395; Rex v. McDaniel, Foster 121; 18 Am. and Eng. Ency. Law (2 Ed.), 472; Pigg v. State, 43 Tex. 108; O'Brien v. State, 6 Tex. App. 665; Johnson v. State, 3 Tex. App. 593; People v. Clough, 59 Cal. 438; People v. Morgan, 4 Utah 407; Allen v. State, 40 Ala. 334. And in support of the proposition that even though the commission of the offense may be suggested or instigated by the defendant, yet he can not be held liable for those things which are done only by the owner, or his agent, although the defendant may have been present aiding and abetting in the doing of them: Spieden v. State, 3 Tex. App. 156; State v. Douglass, 44 Kan. 618; State v. Jansen, 22 Kan. 498; People v. Collins, 53 Cal. 185; Williams v. State, 55 Ga. 391; Allen v. State, 40 Ala. 334.

*Edward C. Crow*, Attorney-General, and *Bruce Barnett* for the State.

(1) The court properly admitted in evidence the written statement made by Joe Mack to the police department of St. Louis, showing that he stole the property. State v. Smith, 37 Mo. 58; State v. Sweeter, 75 Mo. App. 127. If there was any error in the admission of such statement, it was cured by defendant's in-

troduction of evidence corroborative of the facts set forth in said statement. State v. Moore, 156 Mo. 212. (2) The court properly refused to give any instructions authorizing the jury to acquit if they believed that the box of clothing was taken by Joe Mack at the suggestion of Brown, who acted with the consent of the railroad company; this property was in the possession of the railroad company as carrier, and while the theft was from that company, yet the consignee of the goods had such an interest in them at that time that the railroad had no power to consent to any act upon the part of Joe Mack, which would deprive the consignee of his right or ownership in the goods. State v. West, 157 Mo. 309; State v. Stubblefield, 157 Mo. 360. (3) The court was right in instructing the jury to ignore the fact that Joe Mack had been acquitted of the charge of larceny of the property in question. The question did not thereby become adjudicated in favor of defendant. Defendant had never been put in jeopardy for the offense. The indictment does not charge that Joe Mack stole the property, and the conviction of the thief is not a necessary prerequisite to the conviction of one receiving the stolen property. R. S. 1899, sec. 1917; State v. Phillips, 24 Mo. 475; State v. Ross, 29 Mo. 32; State v. Orr, 64 Mo. 339; State v. Anderson, 89 Mo. 312. Such conviction would not even be a bar if Joe Mack were the defendant here. Fosier v. State, 39 Ala. 229; Com. v. Bragg (Ky.), 47 S. W. 212. Defendant is not charged with receiving property stolen by Joe Mack, but of receiving stolen property. The indictment did not allege by whom the property had been stolen, nor was such an allegation necessary. State v. Guild, 149 Mo. 377.

GANTT, P. J.—The defendant was indicted in the circuit court of the city of St. Louis, together with Samuel Waghalter, for receiving stolen goods knowing them to have been stolen, to-wit, one box of clothing of

the value of $740.50, from the Cleveland, Cincinnati, Chicago & St. Louis Railway Company.

A severance was granted and on his separate trial defendant was convicted and sentenced to the penitentiary for three years. From that sentence he appeals.

The facts are practically undisputed. On the 28th of July, 1901, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, commonly known as the "Big Four," received at its freight house in East St. Louis, Illinois, a box or case of clothing of the value of $740.50, addressed and consigned to Seelig & Co., Kansas City, Missouri, billed to be delivered to the Missouri Pacific Railway Company for transportation over the remaining distance to Kansas City. In the usual course of business this box was to be transported to the Missouri Pacific Railway freight office by the St. Louis Transfer Company, a common carrier, which was in the business of transporting freight from one connecting railroad to another.

In order to keep a record of the transportation of this freight in this manner, a uniform system was in operation between all of the railroads running into East St. Louis and the Transfer Company, by which the railroad company delivering the freight to the Transfer Company made out duplicate tickets showing the box or bundle of freight, with the number and name of the consignee, and when each bundle was delivered to the Transfer Company's wagon, the driver thereof signed one of these tickets as a receipt to the railroad for the delivery of the goods and the other ticket was given to the driver of the wagon, who, under his instructions, would, upon the delivery of the goods to the other connecting railroad, get the signature of that company to that ticket for the delivery of the freight, and this ticket would be returned by the driver of the Transfer Company's wagon to the first company, so that when a railroad sent freight through this Transfer Company to a connecting line, it would

have receipts therefor or acknowledgment of the delivery thereto, both from the Transfer Company, and from the railroad company which had received the freight.

All of the employees, both of the Big Four railroad, and of the Transfer Company, had strict instructions neither to deliver nor receive freight except upon compliance with the above rule.

These tickets referred to were, in the course of business and under the fixed rule of the Big Four, delivered by a delivery clerk, to a person known as a *picker*, an employee whose business it was, upon the receipt of the tickets in duplicate, to search or *pick out* the articles or boxes of freight designated by such tickets, and to deliver the same to the driver of the wagon of the Transfer Company.

The evidence shows that a trucker would actually load or assist in loading the freight on the wagon, but for practical purposes *the picker* would deliver the goods to a driver of the Transfer Company.

The testimony shows that from about the latter part of June, 1901, until the 31st day of July, 1901, the prosecuting witness, The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, popularly known as the "Big Four," had in its employ and pay a Thiel detective, named C. V. Brown, under the disguise of a "picker" of freight on the platform of said railroad company at East St. Louis, in the State of Illinois; that said detective was employed and sent over to East St. Louis to do work as a detective for and on behalf of the Big Four railroad, under the mask of a picker for said Big Four railroad, as a result of a conference between Mr. Neel, local superintendent or agent of said railroad company at East St. Louis, with the witness C. A. Peterson, vice-president of the Thiel Detective Agency, his services as such detective being paid for by said railroad company, the prosecuting witness herein, and during said services the agent of said rail-

road company was conferring with the Thiel Detective Agency in regard to the work done and to be done by said detective agency; that said Brown, as such picker of freight, had the authority to designate what parcels should be loaded upon the various wagons from the platform of said railroad company, and thereupon assisted the trucker in placing said parcels upon the trucks and the wagons, said picker being furnished with tickets by the checkers indicating the pieces to be transferred.

On the afternoon of July 30, 1901, detective and picker Brown, selected and caused to be placed upon the wagon of one Joe Mack, a driver for the St. Louis Transfer Company, several pieces of freight, and among others, a large box, the same being the "case of clothing" referred to in the indictment in this case, and told Mack to "bring it to the Sheeney's on Franklin avenue"—referring to the store of appellant's father; that Mack did not wish to accede to Brown's request, unless Brown gave him a ticket for the box, but that Brown told him that he had "sent a bill over in the morning;" and finally persuaded Mack to do with the box as he had requested, though Mack believed that the box was stolen or being stolen by Brown, Mack at the time not knowing or suspecting the true character of Brown as a detective in the employ of said railroad company.

Thiel's Detective Agency had been notified by telephone that the wagon and box were on their way over, and said agency in turn notified the police department of St. Louis, so that when Mack drove the wagon up to Waghalter's premises on Franklin avenue, in St. Louis, between four and five o'clock in the afternoon, there were four city detectives and four Thiel detectives in the immediate vicinity watching for said wagon, and as soon as the box had been rolled off the wagon and into Waghalter's store, they all closed in upon Mack,

the Waghalters and the box, and after searching the premises for the avowed object of trying to discover other alleged stolen property, the Waghalters and Mack and the box and wagon were taken to the Four Courts, where they and the detectives and officers immediately, or very soon thereafter, were joined by the attorney and officials of the railroad company and of the transfer company.

While under arrest at Waghalter's store, Officer Gaffney put certain questions to Mack, the driver, relative to whether he, Mack, had any ticket for the box; and appellant objected to such statements as not being made in the presence of appellant and as being hearsay and made while both Mack and appellant were under arrest and under circumstances not requiring appellant to make a reply, even if he had heard Mack's statements, and appellant saved his exceptions to the ruling of the court, and, at the same time, the court permitted Officer Gaffney to state, "We looked around then to see if we could see any other stolen goods in the house," appellant objecting, on the ground that witness should not be permitted to testify to his conclusion that said box was stolen, or that other stolen goods were likely to be found in said premises, and appellant saved his exceptions to the ruling of the court. Officer Shannon, over the objection of appellant, was permitted to testify to Mack's statement made to him while on their wagon on the way to the Four Courts, appellant Waghalter not being with them, said statement being with reference to how Mack had obtained the box of goods, the court ruling that such statement was competent to show that the box was stolen, and appellant duly saved his exception to this ruling. Again, after arriving at the Four Courts, Mack made a statement to Mr. Tufts, superintendent of the St. Louis Transfer Company, nobody being present except themselves, with reference to how, where and why he had taken said box of goods; and notwithstanding the ob-

jection of appellant that such statement was hearsay
and not in any sense binding upon this appellant, the
court overruled the objection and held that said state-
ment of Mack was competent as tending to show
"whether or not the property was stolen."

The State was permitted, over the objection of ap-
pellant, to put in evidence a written, signed statement,
made by the driver, Mack, in the office of the chief of
detectives at the Four Courts, the court again ruling
that said statement of the alleged thief was competent
as tending to show that the property had been stolen.

The appellant offered in evidence the statutes of
Illinois upon the subject of jurisdiction of courts and
with reference to larceny, as charged in indictment
numbered 165 in the case of the People of Illinois
versus Joseph Mack et al.; whereupon the circuit attor-
ney waived the reading of said statutes and admitted
that the circuit court of the county of St. Clair, State
of Illinois, had jurisdiction of the subject-matter and
person of Joseph Mack and others and said indictment
and the offense charged therein.    Thereupon the appel-
lant offered in evidence a duly authenticated transcript
of the record of the circuit court of the Third Judicial
Circuit, held in St. Clair county, in the town of Belle-
ville, in the State of Illinois, the same being record of
indictment numbered 165 and in the cause of the People
of Illinois versus Joseph Mack et al.; and an objection
by the State, that said transcript of record was incom-
petent and immaterial, was sustained by the court, and
appellant duly saved his exceptions.    Said transcript of
record of the Illinois court is set out in full, and shows
that Joe Mack was placed upon trial on the 27th day
of January, 1902, at Belleville, Illinois, for stealing on
the 30th day of July, 1901, "one case of clothing;"
and that at the conclusion of the testimony on behalf of
the State, the court instructed the jury to find the de-
fendant "not guilty."    It had already been proved
during the course of the State's testimony that the Joe

Mack referred to in the aforesaid indictment and transcript of record was the same Joe Mack who was placed upon trial at Belleville, in the State of Illinois, and the same Joe Mack who had received the box from the detective, Brown, on the afternoon of July 30, 1901, from the platform of the Big Four Railroad Company at East St. Louis, and subsequently, during the same afternoon, was arrested at the premises of Waghalter, the appellant herein, while delivering the box there; and that the case of clothing referred to in the indictment in this cause is the same box of clothing for the alleged stealing of which at East St. Louis on the 30th day of July, 1901, Joe Mack was placed upon trial and acquitted at Belleville, on the 27th day of January, 1902.

It had also appeared from the testimony of the aforesaid witnesses in this cause that they also had given their testimony at the trial of Joe Mack at Belleville, and that the aforesaid C. V. Brown, the detective who operated at East St. Louis under the disguise of a picker, for and on behalf of the Big Four railroad, and who delivered the box to Mack, had testified at the aforesaid trial of Mack, at Belleville.

Defendant offered a demurrer at the close of the State's case on general and special grounds, and among others, that the evidence showed no trespass and larceny of property by Joe Mack, which was overruled.

Among the instructions asked by defendant and refused by the court were the following:

"6. The court instructs the jury that if the person referred to in the testimony as Brown, and as being a freight picker for the railroad company named in the indictment, induced and persuaded the transfer driver, named Mack, to take and steal the property in question, then said taking was with such consent of the owner's, agent as will deprive said taking of said property of felonious trespass and intent, and said property so taken was not stolen, and the jury should acquit this defendant.

"7. The court instructs the jury that larceny can not be committed when the owner or his agent consents to the taking and asportation of the property, though such consent may be given for the purpose of apprehending the party who so takes said property."

I. To constitute larceny the taking must be either actually or constructively without the owner's consent.

While generally private persons can not license crimes, and it is no palliation or excuse that a wrongdoer had anybody's permission, there are exceptions to this general rule, because there are certain acts which the law makes criminal *when and because done without consent*, the doing of which with consent is not legally reprehensible. [1 Bishop's New Crim. Law, sec. 258.]

Thus a man may give away his property; therefore another who takes it by his permission does not commit larceny.

It is an ancient and established rule of the common law that there can be no larceny without a trespass. In 2 East, P. C., larceny is defined as the wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another from any place with a felonious intent to convert them to his (the taker's) own use, and make them his own property, *without the consent of the* owner. · [Reg. v. Holloway, 1 Den. C. C. 370; Ibid v. Ibid, 2 Car. & K. 942; Witt v. State, 9 Mo. 663; State v. Gray, 37 Mo. 463.]

"A person does not consent to his property being taken merely by negligently or purposely leaving it exposed or failing to resist the taking, even though he may know that another intends to come and steal it; but if he does consent to the taking, though only for the purpose of entrapping and prosecuting the intending thief, his consent would prevent the taking from being larceny; and it is immaterial in such case that the person taking the property does not know that the owner consents." [Clark's Crim. Law, p. 260, and citations.]

Neither is it "consent for the owner to obtain the aid of a detective who for the purpose of detection joins the defendant in a criminal act *designed by the defendant* and carried into execution by actual theft." [Rapalje on Larceny, sec. 224.]

"Where one arranges to have a crime committed against his property or himself, and knows that an attempt is to be made to encourage others to commit the act by one acting in concert with the owner, it is not a crime." [Love v. The People, 160 Ill. 508-9.]

In that case Robinson, a detective, entered Hoag's office with the latter's knowledge and consent, and took his money with no intent of stealing it, but in pursuance of a previously arranged plan between him and Hoag, intending solely to entrap the defendant, who had been induced to accompany Robinson, for the apparent commission of a burglary, but the Supreme Court of Illinois held that it was clear that no burglary was committed, there being no felonious intent on the part of Robinson in entering the building or taking the money, and if no burglary by Robinson because of the absence of a felonious intent, the defendant Love could not have been an accomplice, and privy to a burglary. And such is the law in other States. [Speiden v. The State, 3 Tex. App. 156; People v. Collins, 53 Cal. 185; Allen v. The State, 40 Ala. 334; People v. McCord, 76 Mich. 200; Connor v. People, 18 Col. 373; Dodge v. Brittain, Meigs (Tenn.) 84; Zink v. The People, 77 N. Y. 114; Williams v. The State, 55 Ga. 391; Connor v. People (Col.), 25 L. R. A. 341; State v. Hayes, 105 Mo. 76.]

In view of the evidence in this case, certain conclusions seem inevitable:

First. That the box of clothing was taken from the possession of the Big Four Railway Company by C. V. Brown, who at the time was the agent of and in the employment of said company, and the said taking was with the full knowledge and consent of said railway

company, and in pursuance of a previous arrangement, and was not felonious.

Second. The said taking was instigated by the said C. V. Brown for the sole purpose of entrapping Mack, the driver and the Waghalters, to whom he directed the goods to be taken.

Third. It is not a case in which the criminal design originated with the defendants or the driver Mack.

The courts of last resort in many of the States of our Union have dealt with the question presented by this appeal and they are unanimous in holding that when the owner consents or by his agent assists in a taking contrived by himself, it is not larceny.

In Williams v. The State, 55 Ga. 395, Judge BLECKLEY expresses the concensus of judicial opinion as follows: ''It seems to be settled law that traps may be set to catch the guilty and the business of trapping has, with the sanction of the courts, been carried pretty far. Opportunity to commit crime, may, by design, be rendered the most complete, and if the accused embrace it he will still be criminal. Property may be left exposed for the express purpose that a suspected thief may commit himself by stealing it. The owner is not bound to take measures for security. He may repose upon the law alone, and the law will not inquire into his motive for trusting it. But can the owner directly, through his agent, solicit the suspected party to come forward and commit the criminal act, and then complain of it as a crime, especially where the agent, to whom he has entrusted the conduct of the transaction, puts his own hand into the *corpus dclicti*, and assists the accused to perform one or more of the acts necessary to constitute the offense? Should not the owner and his agent, after making everything ready and easy, wait passively and let the would-be criminal perpetrate the offense for himself in each and every essential part of it? It would seem to us that this is the safer law, as well as the sounder

morality, and we think it accords with the authorities. [2 Leach, 913; 2 East, P. C., ch. 16, sec. 101, p. 666; 1 Car. & Mar. 218; 11 Humph. 320; 2 Baily 569.] In the present case, but for the owner's incitement, through his agent, the accused may have repented of the contemplated wickedness before it had developed into act. It may have stopped at sin, without putting on the body of crime. To stimulate unlawful intentions with the motive of bringing them to punishable maturity, is a dangerous practice. Humanity is weak; even strong men are sometimes unprepared to cope with temptation, and resist encouragement to evil.''

This court in State v. Hayes, 105 Mo. 76, in equally severe terms condemned the conduct of a detective in actually encouraging the commission of a crime in order to apprehend an offender.

Judge THOMAS quoted with approval the language of the Michigan Supreme Court in Saunders v. The People, 38 Mich. 218, as follows: ''Human nature is frail enough at best, and requires no encouragement in wrongdoing. If we can not assist another and prevent him from violating the laws of the land, we at least should abstain from any active efforts in the way of leading him into temptation. Desire to commit crime and opportunities for the commission thereof would seem sufficiently general and numerous, and no special efforts would seem necessary in the way of encouragement or assistance in that direction.'' [See, also, State v. Jansen, 22 Kan. 498.]

The defendant in this case is charged with receiving stolen goods, knowing them to be stolen. The evidence establishes beyond a peradventure that there was no felonious taking of the goods. The taking and sending the goods from the Big Four station was by that company's own agent, C. V. Brown, and was not larceny because done by its own agent with its own express consent and connivance, and thus an essential in-

gredient, to-wit, the stealing of the goods, is absent, and the State necessarily failed in establishing an essential link in the offense charged. What we have here said is in entire accord with State v. West, 157 Mo. loc. cit. 319, 324, inclusive. [State v. Stubblefield, 157 Mo. 360.]

The ownership was laid in the railway company and properly, and we entertain no doubt whatever that its consent under the circumstances deprived the taking of a felonious character.

Various other errors are assigned, but as in our opinion the undisputed facts preclude the conviction of the defendant, the other assignments become unimportant in this case.

The judgment must be and is reversed, and the prisoner discharged. *Fox, J.,* concurs; *Burgess, J.,* absent.