THE STATE v. HERSCHEL PERRIN, *alias* JAMES MURPHY, *alias* C. F. HALL, *alias* L. F. MILLER, and JOHN WILLIAMS and ADOLPH NELMS, Appellants.—292 S. W. 54.

Division Two, January 24, 1927.

1. **LARCENY: Voluntary Consent: Assistance.** If the owner of goods voluntarily hands to another a package and to that extent assists him to get it into his possession, the act of such other is not larceny. The manager of a wholesale cigar house, having received over the telephone an order for cigars, purporting to come from a drug store, the caller stating that they would be called for, and having checked the purported order by calling the drug store and ascertaining that no such order had been placed, directed that the cigars be made up for delivery and the package be addressed to the drug store, and that having been done, when one of the defendants called soon after and called for the drug store package, handed it to him, who signed his name to a receipt therefor. Held, that the manager voluntarily handed and delivered the package to defendant, and this constituted consent to the taking.

2. ——: ——: **Facilitating Taking.** To facilitate a criminal design is to make it easy of execution. Where the criminal design originated with the accused, and the servant of the owner, by his instructions, appears to co-operate in the execution of the design by furnishing facilities for its execution in the expectation that the accused will avail himself of the facilities and take the owner's property, there is no legal consent; but furnishing facilities means nothing more than purposely exposing property, or purposely neglecting to protect it, or purposely removing obstacles, under the expectation that the accused will take it, but that does not imply consent; but to voluntarily hand to a pretender goods fraudulently ordered by him in the name of another, knowing the order to be a fraud and the criminal design of the pretender, is a delivery of the property and a consenting to the taking.

---

Corpus Juris-Cyc. References: **Larceny,** 36 C. J., Section 98, p. 761, n. 50 New.

Appeal from Jackson Circuit Court.—*Hon. Charles H. Pence,* Judge.

Reversed and remanded.

*Rader & Rader* and *Anthony P. Nugent* for appellant.

The court erred in overruling the demurrer filed at the close of all the evidence. State v. Loeb, 190 S. W. 299; State v. Waghalter, 177 Mo. 676; State v. James, 133 Mo. App. 300; State v. Campbell, 108 Mo. 611; State v. Gray, 37 Mo. 463; State v. Anderson, 186 Mo. 25; State v. Court, 225 Mo. 609; State v. West, 157 Mo. 309; State v. Hayes, 105 Mo. 450; United States v. Faye, 1 Curt. 364; Connor v. People, 18 Colo. 373; Saunders v. People, 18 Mich. 218; Alexander v. State, 12 Tex. 540; Topolewski v. State, 130 Wis. 244; Kemp v. State, 11 Humph. (Tenn.) 329; Allen v. State, 40 Ala. 334; Pigg v. State, 43 Tex. 108; Bishop, Crim. Law, sec. 262; Wharton, Crim. Law, secs. 914; Clark & Marshall, Crim. Law, p. 710; 3 Chitty, Crim. Law, 925; Russell on Crime, 190; Kelly, Crim. Law, sec. 657; 36 C. J. 759, sec. 85.

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for respondent.

The rules in the Waghalter case and similar cases are not applicable to this case because here the agent of the owner of the goods did not incite or encourage the commission of a crime. He merely permitted a crime already planned and partially executed to be carried to fruition and did no more than was necessary to this end. Note to Topolewski v. State, 7 L. R. A. (N. S.) 756.

DAVIS, C.—Defendants were jointly charged by indictment filed in Jackson County, on May 8, 1925, with feloniously stealing cigars of the value of more than fifty dollars from Niles & Moser Cigar Company. Tried on June 18, 1925, before the court and a jury, they were found guilty, the jury returning a separate verdict as to each defendant and assessing the punishment of each at three years in the penitentiary.

The evidence for the State tends to show that on the morning of March 9, 1925, one Ruby Goins was the telephone operator of Niles & Moser Cigar Company, wholesale tobacconists in Kansas City, and that she received over the telephone an order for a quantity of cigars of the value of more than fifty dollars, purporting to come from C. F. Mertens, operating a drug store at 1834 Main Street, the person calling over the telephone stating the cigars would be called for.

The voice of the person placing the order was that of a man. The telephone operator immediately checked the purported order by calling Mertens's Drug Store over the telephone, and was told by Mertens's wife, in the store at the time, that no such order had been placed. At the trial both Mertens and his wife denied placing such an order.

Witness Eaton for the State testified that he was manager, director and an officer of the Niles & Moser Cigar Company, and upon ascertaining that the Mertens Drug Store had not ordered the cigars he directed that the order be made up for delivery, which was done. Witness Fenn, of the cigar company, testified in substance that the package sent down to Eaton contained the merchandise ordered. Eaton then called the detective department of the Kansas City police and advised them of the above circumstances, two officers later being assigned and appearing at the cigar company's place of business. A package containing cigars of over the value of fifty dollars, purporting to have been ordered by the Mertens Drug Store, was placed in the front office to await the person calling for it, and was easily accessible to Eaton, the manager of the company. In due time defendant Williams came into the cigar store and called for the Mertens package, which Manager Eaton handed to him, Williams signing his name in receipt thereof. Williams then left the cigar store with the package and proceeded to an automobile parked about seventy-five feet from the store, in which defendant Perrin was seated. The detectives immediately followed, seized the cigars and placed both Williams and Perrin under arrest. There was further evidence relating to a conspiracy formed by defendants Perrin, Nelms and Williams as participants in the conspiracy which was sufficient to connect them as participants, but, considering the interpretation we place upon their acts, we deem it unnecessary to set forth such additional evidence. However, such other facts as we deem important will be later noted.

I.   At the close of the State's case and at the close of the whole case, the defendants offered instructions in the nature of demurrers to the evidence to acquit, which the court refused. Defendants here challenge the action of the trial court, maintaining prejudicial error occurred in that regard.

The evidence adduced by the State as to the entire transaction is clear and certain. Little doubt obtains as to the following facts and inferences. A fictitious order was telephoned to the Niles & Moser Cigar Company, hereinafter called "cigar company," for certain cigars of the value of more than fifty dollars, which purported to come from the Mertens Drug Store, the voice over the telephone stating that the cigars would be called for. This was known as a "will-

call'' order.  As was the custom upon receiving a will-call order, the telephone operator receiving the call checked the order by immediately telephoning the Mertens Drug Store for verification, and, upon ascertaining that the order was fraudulent, she advised Eaton, manager of the cigar company, of the situation.  Being advised that the order was spurious, in order to entrap the culprits, the manager caused a package containing the cigars ordered, to be made up and placed near him in the front office for delivery, and when defendant Williams came in and called for the Mertens package, the manager personally and voluntarily handed and delivered to Williams the made-up package containing the cigars designated in the fraudulent telephone order, which the manager knew to be fraudulent.

It is conceded by the State that the language used in State v. Loeb, 190 S. W. 299; State v. Waghalter, 177 Mo. 676, 76 S. W. 1028; State v. Haynes, 105 Mo. 76; and Topolewski v. State, 130 Wis. 244, 7 L. R. A. (N. S.) 756, seems to sustain defendants' contention that the facts are insufficient to constitute larceny, because the manager of the cigar company manually delivered the package of cigars to defendant Williams.

The State, however, argues that the instant case is clearly distinguished on the facts from the cases noted above, in that there the owners of the merchandise actively encouraged the commission of the offense, while here neither the owner nor its agent instigated or concocted the scheme to steal.

In support of its contention the State cites Lowe v. State, 44 Fla. 449, 32 So. 956, 103 Am. St. 171, as containing the distinguishing rule, as follows:

"The authorities are abundant and the law unquestioned, that a taking by the voluntary consent of the owner or his authorized servant or agent, even though with a felonious intent, does not constitute larceny.  But where the criminal design originates with the accused, and the owner does not in person or by agent suggest the design nor actively urge the accused on to the commission of the crime, the mere fact that such owner, suspecting that the accused intended to steal his property, in person or through a servant or agent exposes the property or neglects to protect it or furnishes facilities for the execution of the criminal design under the expectation that the accused will take the property or avail himself of the facilities furnished, will not amount to a consent in law, even though the agent or servant of such owner by his instructions appears to co-operate in the execution of the crime.''

Notwithstanding the criminal design originated with the defendants herein and the owner did not in person or by agent suggest the design nor actively urge the accused on to the commission of the crime, we are of the opinion that the evidence fails to show that the

cigar company or its manager merely exposed the package of cigars or neglected to protect it. Had the manager merely left the package of cigars in an exposed place or neglected to protect it, suspecting the defendants intended to steal it, and had Williams then come in and taken the package, without more, a wholly different situation would be presented for our consideration, for the consent to the taking would then be lacking. But that is not the situation here, for the manager voluntarily handed and delivered the package to Williams when he asked for it. This constituted consent, distinguishing and interpreting the facts as constituting no offense.

The State contends, however, that where the criminal design originates with the accused, and the servant or agent of the owner, by his instructions, appears to co-operate in the execution of the crime by furnishing facilities for the execution of the criminal design under the expectation that the accused will take the property or avail himself of the facilities furnished, legal consent is not demonstrated. To that we agree. The word "facility," however, is defined "quality of being easily performed, freedom from difficulty, ease," and is derived from the Latin word "facilis," meaning capable of being made or done, hence easy. The import of the words "furnishing facilities" can be construed to mean nothing more than purposely exposing property, or purposely neglecting to protect it, or purposely removing obstacles, under the expectation that the accused will take the property. This does not imply consent. A totally foreign situation is presented when the owner or his authorized servant or agent assumes that the person calling for the ordered merchandise is a pretender and a fraud, and then voluntarily hands and delivers to the pretender the package called for. This goes further than merely furnishing facilities; it is consenting to the taking.

The only examples we are able to find that comprehend the word "facilities" are found in 36 Corpus Juris, 761, which we quote as follows:

"Nor will the commission of an act intended to facilitate the commission of the contemplated crime be so construed. Thus it has been held that the act of an owner in hobbling a horse and turning it loose so that it could be taken by the intended thief (Connor v. State, 24 Tex. App. 245, 6 S. W. 138); or a constable in pretending to be intoxicated and lying down in a public place in that supposed condition so that his pockets might be picked (People v. Hanselman, 76 Cal. 460, 18 Pac. 925, 9 Am. St. 238); or in going out upon a road where a robber is operating so that he might be held up by him (Norden's Case, 20 East P. C. 666), does not constitute consent."

It is evident from the facts in the above cases that by their acts the owners of the property did nothing more than make it easy for

the accused to commit larceny, and that no element of consent is found therein.

The clearest exposition of the distinguishing rule is found in Dodge v. Brittain, Meigs (Tenn.) 1. c. 86, as follows:

"No larceny can be committed of property, the possession of which the owner parts from voluntarily. All the authorities are express upon the point, that to constitute the crime of larceny, possession of the property must be taken by the thief *invito domino*. . . . None of them go further than to say, that a man may direct a servant to appear to encourage the design of the thieves, and lead them on until the offense is complete, so long as he did not induce the original intent, but only provided for its discovery after it was formed; that a servant, by the desire of his master, may show thieves, breaking into the house for plunder, where the plate is kept, and if they remove it, they are guilty of larceny; and that if a man is suspected of an intent to steal, and another, to try him, leaves property in his way, which he takes, he is guilty of larceny. In all these cases, the possession of the property remains with the owner, and a trespass is committed in the taking by the thief. But such would not be the case, if the master had directed the servant to deliver the property to the thief, instead of directing him to furnish facilties for his arriving at the place where it was kept."

In State v. Loeb, supra, it is said: "If an owner of property delivers his property to one who wishes to steal it, there is no trespass and hence no larceny." In State v. Waghalter, supra, 1. c. 686, the court says: "A person does not consent to his property being taken merely by negligently or purposely leaving it exposed or failing to resist the taking, even though he may know that another intends to come and steal it; but if he does consent to the taking, though only for the purpose of entrapping and prosecuting the intending thief, his consent would prevent the taking from being larceny; and it is immaterial in such case that the person taking the property does not know that the owner consents." In Topolewski v. State, supra, it is said: "It will be noted that the plan for depriving the packing company of its property originated with the accused, but that it was wholly impracticable of accomplishment without the property being placed on the loading platform, and the accused not being interfered with when he attempted to take it. When Dolan agreed to procure such placing the packing company, in legal effect, agreed thereto."

Here we have presented a situation in which the manager and authorized agent of the owner, knowing that the person calling for the order was a fraudulent pretender, freely and voluntarily, for the purpose of entrapping the culprits, delivered the package of cigars to defendant Williams. On such facts, we find no element of trespass, but do find the element of consent to the taking present, and there-

fore the nonguilt of defendants as larceners. That defendants intended to commit a crime we have no doubt, but it is clear that they were thwarted in their purpose and design by the consent of the cigar company to the taking.

Inasmuch as defendants, Perrin, Nelms and Williams are not guilty of larceny as charged, the cause is reversed and remanded as to each of them for such proceedings, if any, as the prosecutor is advised to take.

PER CURIAM:—The foregoing opinion by Davis, C., is adopted as the opinion of the court. All of the judges concur.