### Jane Dunn v. Jonathan F. Dunn.
### Jonathan F. Dunn v. Jane Dunn.

The verdict of a jury on an issue out of chancery has no binding force, and a new trial will be ordered upon much slighter grounds than in an ordinary action at law. Per CAMPBELL J.; MARTIN CH. J. concurring.

And the Court may entirely disregard the verdict and make a decree against [it, notwithstanding it satisfies the Judge who tried the cause.

DUNN v. DUNN.

An issue awarded at the hearing in chancery to be tried by jury, must be confined not only to facts put in issue by the pleadings, but to facts concerning which some testimony has already been introduced and read at the hearing. Per CAMPBELL J.; MARTIN CH. J. concurring.

Where, therefore, the pleadings in chancery put in issue adultery committed by one of the parties in April, May and June, 1858, but no testimony was taken tending to show its commission in April, and at the hearing issues were framed for trial by jury covering the months named, and also December and January preceding, such issues, so far as they related to the months of December, January and April, were irregular, and a general verdict of guilty rendered thereon must be disregarded. Per CAMPBELL J.; MARTIN CH. J. concurring.

CHRISTIANCY J. concurred in holding the issues irregular so far as they related to time not covered by the pleadings; but as no evidence was given on the trial of transactions outside the pleadings, he was of opinion that the verdict should not be disregarded because of the issue being too broad.

Where in a case in chancery several issues are framed for trial by jury, each issue must be passed upon by the jury separately. Per CAMPBELL J.; MARTIN CH. J. concurring.

Evidence having been given to establish the fact of adultery at a time named, the alleged *particeps criminis* was called to disprove it, and denied its commission. He was asked on cross-examination if he had not stated, the year before the alleged offense, that he had had illicit intercourse with the party charged. It was held that the inquiry did not relate to any matter in issue, and that it was error to allow the question to be put.

Where a witness has been thus questioned about immaterial matters, he can not be impeached by proof of contradictory statements in regard to them.

A deposition taken in chancery cannot be read on the trial of issues by a jury, where the witness is personally present at the trial.

*Heard November 12th, 13th and 14th, 1862. Decided May 20th.*

Appeal in Chancery from Washtenaw Circuit.

*A. Felch, J. B. Gott,* and *T. M. Cooley,* for Jane Dunn.

*O. Hawkins,* for Jonathan F. Dunn.

CAMPBELL J.:

Upon the hearing of this cause originally, the Circuit Court, not being able to determine the facts from the evidence, directed an issue to try and determine whether the acts of adultery set up in the answer had been committed. An issue was framed by the Judge and heard before a jury where he presided, and their verdict was returned with his approval, he certifying his minutes of the trial. He rendered a decree thereupon, based on the

verdict, dismissing complainant's bill, and granting relief to defendant on his cross bill. Objections were taken on the trial* and are certified with the proceedings.

Being satisfied that the proceedings under the issue are entirely irregular, and the verdict one which should be set aside and disregarded, I feel constrained to give somewhat fully my reasons for this conclusion, as I deem the practice which has been followed too dangerous to be sanctioned as having any weight in an appellate court.

The grounds urged at the argument for giving to this verdict conclusive weight were, chiefly, that the verdict of a jury on issues from chancery will not be set aside except upon the strongest reasons, and that, the Judge having been satisfied with the verdict, his certificate of approval should prevail.

I do not understand either of these rules to govern us. While a verdict fairly given, without improper reception or rejection of evidence, is not to be lightly disregarded, yet is has no binding force on such issues. A new trial will be ordered upon much slighter grounds than in an ordinary action at law. And even without a new trial, the Court may entirely disregard the verdict and make a decree against it, although it satisfied the Judge who tried the cause. The reason for this difference is, that in an action at law the jury are the sole judges of questions of fact, while in a court of equity there is no process by which the Chancellor can substitute the conscience or belief of a jury for his own; and he must find the facts on his own responsibility. An issue is not framed to relieve him of this responsibility, but to aid him, by a trial in open court, where witnesses are produced and examined orally more fully than they can be on paper. But it may easily happen that a verdict does not assist the Court in coming to a conclusion. And there is no authority which I have discovered which renders it incumbent on any court of chancery, or even proper, to follow a verdict which is not

calculated to aid the conscience of the court, in solving questions of fact otherwise doubtful. Without going into cases in detail, I refer to *East India Co. v. Bazett*, 1 *Jac.* 91; *O'Conner v. Cook*, 8 *Ves.* 536; *Cleeve v. Gascoigne*, 1 *Ambl.* 323; *Lord Faulconberg v. Peirce*, 1 *Ambl.* 210; *Locke v. Colman*, 2 *Myl. & Cr.* 43; *Bootle v. Blundell*, 19 *Ves.* 494, 500; *Blackburne v. Gregson*, 1 *Bro. C. C.* 423; *Armstrong v. Armstrong*, 3 *Myl. & K.* 45. And the remarks of the Chancellor in *Wood v. Wood*, 2 *Paige*, 109, illustrate with much force the danger of resting on anything but the most satisfactory verdict, upon clear and specific charges. The case before us combines many of the most dangerous features of those which have led to the action of the courts in the particular cases I have cited.

It appears that in several of these cases, and probably in all (for the practice appears to require it) the verdict was satisfactory to the Judge. That the opinion of the Judge should be regarded with much respect is undeniable; but, where the same Judge who heard the jury trial acts as Chancellor, there is less foundation for any rule of approval in an appellate court, than where another Judge presides at law. No appellate court, reviewing facts, can permit its own views to be determined by those of the court appealed from, or rest its conclusions on his, however highly it may and should esteem his judgment. The reason why, if at all, the satisfaction of the law judge with the verdict receives weight is, is that he hears the jury trial without any knowledge beforehand of the evidence on the issues framed, or on the rest of the case. His opinion of the correctness of the verdict is therefore unbiased by any extraneous impressions; and, where judge and jury come to the same conclusion together, they are most likely to be right—although experience has shown, as in the cases cited—that the facts may not of necessity be as they find them. At least the verdict and certificate in such cases must usually be in accordance with, and based upon,

nothing but the evidence given before the jury. But with the chancery Judge it is otherwise. He can not properly award an issue until he has been unable to form a satisfactory conclusion on the hearing, upon some material facts, to which the issue must be legally confined. The jury have not the same evidence which he has considered. The testimony upon which they make up their verdict is not the whole evidence which has finally satisfied his mind, and it would be difficult, if not impossible, for him, in approving their finding, to say that he acts entirely upon the testimony produced before them. His previous impressions cannot be shaken off.

I think, therefore, that there is no foundation for any rule which would give to the verdict of a jury, so approved, any conclusive effect which would justify an appellate Court in following it, unless "the information collected before the jury, together with that which appears on the record, is sufficient to enable it to proceed satisfactorily." 2 *Dan. Ch. Pr.* 1306; *Bootle v. Blundell,* 19 *Ves.* 500.

As an issue can only be granted at the hearing as a general thing, and as this issue was so awarded, it is manifest that it must be confined, not only to facts put in issue by the pleadings, but to facts concerning which some testimony has previously been introduced and read at the hearing. No question of doubt could arise upon any fact not sworn to by some one. As the principal errors claimed to have been committed on the trial are connected with the admission of improper testimony, it becomes material to understand the position of the case when this issue was ordered.

Complainant's bill was based on cruel treatment, and also on a neglect to provide for her support. The chief items of accusation were cruel language, endeavors to get rid of complainant, unfounded accusations against her, and a refusal to take her back from her father's house, where she had gone on a visit with defendant's consent, and

threats of advertising her to prevent her receiving credit. There were also charges that she had been put in personal fear. The bill having been taken as confessed, defendant was allowed, upon affidavit of excuse and merits, to put in an answer accompanying the affidavit, whereby he denied these charges, and averred his constant and continued readiness and desire to receive her back into his house. This answer was filed February 17th, 1859. In March the bill was amended by inserting charges of extreme cruelty, and refusal to provide for complainant—apparently to supply a supposed formal omission. On May 14th and June 7th, defendant made oath that he had recently, and since his answer, and not until early in April, 1859, discovered, and was able to prove, that complainant had committed adultery with one James Vosburgh, in January and February, 1858, and with Halsted Douglass in June, 1858; and that he could prove the former by Eva Langton, and the latter by Jane Johnson, Thomas Larry, Abram Brimenstall and Michael Lipe; and that complainant and Douglass had confessed the said adultery to him. June 18th, 1859, defendant was permitted, on these affidavits, to file a supplemental answer, which was filed on the 22d, whereby, after reaffirming his former denials, and his willingness to treat complainant as his wife up to the time of filing his former answer, he set up the same acts mentioned in his affidavit. To this a replication was filed, and testimony was taken on both sides. December 30th, 1859, defendant filed a cross-bill, charging acts of adultery with Halsted S. Douglass on the 20th of June, 1858, on or about the 28th and 29th of June, in the month of May, and during defendant's absence from home in April. Also in the fall of 1857, and in December, 1857, and January, 1858, with Vosburgh. The evidence read at the hearing for complainant, so far as it tended to show acts of adultery, consisted of the testimony of Jane Johnson to acts in June, 1858, and of Ann Teal to an act in

May, 1858, with Douglass, and of Eva Langton to conduct with James Vosburgh at a time not specified, but some time in the winter of 1857–8. This bill also set up desertion.

The Court on the hearing ordered an issue to try the charges of adultery *set up in the answer*. This order would not embrace the act testified to by Ann Teal, but, as she was required to be produced before the jury, the omission was doubtless accidental. But there was no possible foundation for any issue upon any other charges than those referred to by these three witnesses.

In drawing up the issue, which was done by the Court —the parties not agreeing—the charges of misconduct with Douglass were embraced in one count, covering December, 1857, January, April, May and June, 1858; and the autumn of 1857, specifying no part of any month, and no month of the autumn, and no place except the township of Dundee.

The count against Vosburgh related to December, 1857, and January, 1858, in Dundee, without further certainty of time or place.

The case of *Wood v. Wood*, before referred to, is very explicit on the danger of allowing charges without reasonable certainty of time, place and circumstance; remarking that information sufficient to justify the charge will enable the party making it to put it in a tangible form upon the record. Whatever latitude may be allowed in pleading, there is no need of it in framing an issue which is to test the truth of evidence already in. The charges of adultery with Douglass, prior to April, 1858, are not set up in the cross-bill or answer; and are therefore entirely unsustainable in this cause. The charge as to April had not been offered in evidence, and was equally improper to go into the issue.

The jury rendered a general verdict, not specifying which of the charges they found proved, and which not. Had they passed separately upon the charges, we might

derive some benefit from their finding, because we could have seen how far it was founded on evidence. And if they had then passed only on charges supported by proof, and no other objection appeared, it might fairly be said the verdict would materially aid in satisfying the conscience of the Court. But a verdict like this is not sanctioned by practice, even when founded on charges contained in the pleadings. Every issue presented must be separately passed upon, and where this is not done the Court has no means of knowing what value to put on the finding. See *Brink v. Morton*, 2 *Clarke* (*Iowa*), 411; *Hall v. Doran*, 6 *Ibid.* 433.

There is no class of cases wherein more care is necessary to make definite issues than those where adultery is charged. No one can have had much experience at the bar without discovering how large a proportion of such charges are fabricated, and how often they are allowed to be proved by incomplete testimony. Circumstantial evidence is undoubtedly necessary, as a general thing, to prove such offenses; but this renders it the more necessary to secure to the party charged such information of time, place and circumstance, as will enable him or her to meet the proof by legal evidence. It is very manifest that in the case before us the vagueness of the issues, as well as their extension beyond the pleadings, has caused the introduction before the jury of testimony very well calculated to prejudice their minds against complainant, and yet in no sense evidence of any fact charged.

The defendant in making out his case before the jury introduced evidence which, so far as Halsted Douglass was concerned, confined the charges to the month of June, 1858; — Ann Teal as well as Jane Johnson swearing only to acts within that month. This therefore was, so far as the jury were concerned, the only time concerning which inquiries could legitimately be made. If upon the pleadings the case was broader, it still was confined to

DUNN v. DUNN.

April, May and June.  Douglass being introduced for complainant, was interrogated only as to the facts related by defendant's witnesses on the opening.  He was asked on cross-examination, under objection, *whether he had not the previous year stated* that he had illicit intercourse with Mrs. Dunn.  This statement, if made, was not a statement of anything in issue, and, if it had been, it was no evidence as against Mrs. Dunn.  Defendant was then allowed to impeach Douglass, by witnesses who alleged he made such statements at that time.  By allowing such questions the Court necessarily held, and gave the jury to understand, that this evidence bore upon the issue; and it is very easy to see what effect it would have.  No party can be expected to anticipate or prepare for such charges.  The course of investigation allowed only shows more plainly the impropriety of permitting such vague issues to be presented, as well as the necessity of specific findings on such as are laid before the jury.

I am of opinion that the impeaching testimony would have rendered the verdict invalid under any circumstances, whatever might have been the formal correctness of the issues as framed.  It was not founded on any answer which defendant was at liberty to controvert.

The deposition of Eva Langton was allowed to be read when she was present in Court.  This was also illegal.  It is very well settled that the order usually made, that the depositions may be read, is only designed to remove legal objections which might exist by reason of the trial at law, being technically a separate proceeding, which until our Courts were entrusted with jurisdiction, both at law and in equity, was in another tribunal.  But trials before a jury of issues from chancery are governed by the rules of courts of law, which do not permit depositions to be read when the witness is present.  2 *Dan. Ch. Pr.* 1302, 1303; 1 *Barb. Ch. Pr.* 452.

I think the case must be disposed of without any reference to the verdict or trial, at law.

It involves two sets of issues — one based upon complainant's bill, and the other on defendant's answer and cross-bill.

I do not think complainant's case sufficiently made out. She has proved an aggravated case of desertion—but not one of such cruel treatment as has been usually regarded as within the statute. Desertion alone is not one of the grounds relied on or charged, nor was it for the statutory period.

Neither do I think that any case is made by defendant on his cross-bill. Jane Johnson's testimony is the chief evidence which is at all conclusive. The testimony of Ann Teal and Eva Langton, if received to prove the act of adultery, is incredible. It is very manifest from their conduct that they drew no such inference at the time, and subsequent inferences are of very little value. Ann Teal's detailed statement is inconsistent with itself. Jane Johnson's evidence is quite direct; and had her contradictions and inconsistencies been such as could reasonably be accounted for by confusion and annoyance on cross-examination, it might be worthy of credit. But she has sworn as positively that she did not see the act committed, and did not see the parties on the bed together, as that she did see them. This is not a discrepancy which can be reconciled on any hypothesis. No one can safely be charged on such contradictions. In this I leave out of view the merely impeaching testimony, which is not conclusive either way, and also her suspicious conduct, which is equally undecisive.

But the conduct of defendant has been such as to raise strong suspicions of fabrication. The facts sworn to are such as a little coloring one way or the other would render conclusive or valueless. Defendant appears never to have had any special affection for his wife. He is shown

to have alleged against her, when she was at her father's and before she filed her bill, the same charges in substance now relied on for a divorce. Yet he at once after refusing to take her home advertised her as absconding. When he put in his first answer he offered to receive her back, and alleged he had always been willing to receive her. And although, as suggested on the argument, this answer was not signed by him under the rule, yet it was put in at his motion, on his own affidavit; and he must therefore have approved it. His affidavit, on which he was allowed to file his answer setting up adultery, avers that the facts had been recently brought to his knowledge. It appears distinctly from their own oaths that his witnesses, named in the affidavit, had not then informed him of the charges they afterwards swore to. If they had, they have contradicted themselves. The only conclusion at which I have been able to arrive is, that he did know as much before the suit was commenced as after; and that familiarities which were not then regarded as showing adultery, were afterwards colored and aggravated by the witnesses, either intentionally or by swearing to their mere suppositions, so as to furnish reason, unexplained, to believe it. The evidence shows that very gross behavior was so common among many of the persons associating together, that those unacquainted with the freedom of their manners would not suppose it could be anything but criminal. The witnesses who testify to some of the grossest acts do not appear to have been led to any such conclusion. And where such license of behavior is shown to prevail, it would be unsafe to conclude that adultery had been committed, without evidence which would not be needed in more refined society.

I am of opinion that the charges of adultery are not made out; and that both bill and cross-bill should be dismissed.

MARTIN CH. J. concurred.

DUNN v. DUNN.

MANNING J. *dissenting:*

The question of adultery was submitted to a jury, and I am satisfied with their verdict after reviewing the whole testimony — that before the Court when the feigned issue was awarded, and that given before the jury on the trial. I do not see how the jury could have come to a different conclusion if they believed the evidence of Teal and Johnson. Their testimony warrants the verdict, and the Judge who awarded the issue and presided at the trial · certifies that he is satisfied with the finding of the jury. We all know how much the weight to be given to evidence depends on the deportment of the witness while on the stand, and his manner of testifying.

As to the alleged errors on the trial, I do not regard them of such a character as to affect the verdict. The Court will not withhold its decree, or grant a new trial, for slight errors, if it is satisfied with the verdict. ·

Under the circumstances I do not think the cross-examination of Douglass, and the examination of witnesses to contradict him, was clearly erroneous, as its only object was to discredit him. I cannot look upon the questions put to him as so clearly outside of the case as to come within the rule excluding the examination of witnesses to contradict him.

The order for a feigned issue directed that either party should be at liberty to ' read the deposition of any witness that had been taken in the cause, except the depositions of certain witnesses mentioned in the order, who were to be examined before the jury. Mrs. Langton was not one of them.

CHRISTIANCY J.:

The principal question in this case is upon the fact of adultery: the testimony bearing upon this point is very conflicting, and any conclusion to be drawn by the Court

involves the necessity of judging of the credibility of the respective witnesses. This is generally a matter of much difficulty when the judgment is to be formed only from the testimony as it appears upon paper, without the opportunity of seeing the witnesses and observing their demeanor, and the mode of giving their testimony. It is a question of peculiar difficulty in the present case, from the nature of the question involved, the number of witnesses and the nature of the conflicting evidence; and any conclusion to be drawn from the written evidence alone must be painfully unsatisfactory. Whatever the conclusion at which we may arrive, we can by no means feel confident that it might not have been directly the reverse, had the witnesses been examined in our presence.

The question was one peculiarly fitted for investigation by a jury. And if nothing had occurred on the trial to vitiate the verdict—if satisfied that the question had been fairly tried by them without the admission of incompetent testimony, by which they might have been misled—as the more important witnesses were examined in their presence, I should have felt much more confidence in the correctness of their conclusion than in any which I should be able to draw from the written evidence alone, and I should then have concurred substantially in the opinion expressed by my brother Manning.

But the defendant (in the original suit) was allowed not only to inquire of the witness Douglass, as to his statements or confessions of adultery with Mrs. Dunn at a period outside of the issue made by the pleadings, but to contradict the witness by showing that he had in fact made such statements or confessions. I concur with my brother Campbell that this was clearly erroneous. This improper testimony was of a character peculiarly calculated to mislead the minds of the jury to the prejudice of Mrs. Dunn. I concur also with my brother Campbell that the written deposition of Mrs. Eva Langton was improperly

admitted in evidence, the witness being present in Court : there can be no certainty that the effect upon the minds of the jury of an oral examination before them would have been the same as that produced by the written deposition. I cannot therefore feel safe in resting my judgment upon this verdict. I am therefore compelled to form my opinion from the written evidence alone. And without attempting here to enter upon an extended review and complete analysis of the evidence, it is sufficient for me to say that, judging only from the evidence as it appears upon paper, it is not such as to satisfy my mind beyond a reasonable doubt that Mrs. Dunn was guilty of the adultery charged.

I do not think the vagueness of the issue would, of itself, be sufficient, under the circumstances of this case, to invalidate the verdict, as suggested by my brother Campbell. The issue, it is true, as framed by the Court, was broader than that authorized by the pleadings; and if evidence of adultery had been given relating to a period not covered by the pleadings, the verdict would have been of no validity. But the only evidence given tending to prove adultery was confined to the period covered by the pleadings.

The jury must, I think, be presumed to have found their verdict upon a charge of which there was some evidence, rather than upon a charge of which there was none whatever. There was no evidence fairly tending to the proof of any adultery except that with Douglass in the month of June, 1858. This was clearly in issue by the pleadings, and had been so frequently the subject of judicial inquiry, previous to this jury trial, that there could be no pretext that Mrs. Dunn or her counsel could have been taken by surprise. If her counsel apprehended any danger from the vagueness of the charge as to time, place or occasion, as stated in Dunn's answer and cross-bill, it was easy to have secured the requisite certainty by demurrer. But

11 Mich.—T.

D U N N  *v.*  D U N N.

it is too late, I think, to raise such an objection after a full trial has been had upon the merits; especially where there is no ground for supposing surprise on her part; and I can see no good reason why the feigned issue upon the fact of adultery should be more specific than that presented upon the same fact by the pleadings.

I concur with my brother Campbell that Mrs. Dunn has also failed to establish the case made by her bill; and that both the original and cross - bill should be dismissed. I should have been glad to have arrived at a different result; as I am satisfied from the nature of the case, as shown by the evidence, that the welfare of both parties would have been promoted by a divorce.

*Decree reversed, and bill and cross-bill dismissed.*