## HARRY H. SAUNDERS v. THE PEOPLE.

### *Decoying.*

Decoying, or conniving with persons suspected of criminal designs, for the purpose of arresting them in the commission of the offense, is denounced by the Supreme Court.

A lawyer was arrested for feloniously entering a court building and removing public records. A policeman testified that the prisoner had asked him to leave the court room door unlocked so that he could get the papers, and that after consulting with his superior officer he had consented, and afterwards lay in wait for him. *Held* proper to subject this witness to very searching cross-examination, and to ask him whether he had not previously had improper dealings with the prisoner and put in false swearing for him. The jury was entitled to all the light that would have been furnished by former transactions between them, and such a question might have tested the witness' credibility.

A theft was committed by night. The thief was arrested on the

spot, and another man suspected of planning the theft was arrested immediately afterwards in the near neighborhood. *Held* that upon the latter's trial he could introduce rebutting evidence that he was in the habit of frequenting that neighborhood day and night.

Error to Recorder's Court of Detroit. Submitted January 15. Decided January 22.

CRIMINAL INFORMATION for statutory offenses. Saunders was convicted of breaking and entering by night a court room not connected with a dwelling and feloniously taking therefrom certain recognizances described as contracts in force and public records. Saunders was a lawyer, and it was in evidence that he had asked policeman Webb to leave the door of the police court room unlocked in order that he might get the O'Neil bonds, and that Webb, after consulting with his superior officer, consented, and then lay in wait with others, and at nine o'clock at night caught one Moylan removing the papers from a desk. Webb was asked on cross-examination if he had not once put in some false swearing for Saunders, and the question was ruled out. It being shown that Saunders was arrested in the near neighborhood of the police court room just after Moylan was caught stealing the bonds, a witness named Dunnebacke was questioned with a view to show that Saunders was in the habit of frequenting that neighborhood day and night. His evidence was excluded.

*George H. Penniman* and *Fred. A. Baker* for plaintiff in error. Judgment should be reversed and defendant discharged, because it appears on the face of the record that he is not guilty of any offense. *Reg. v. Johnson*, 1 Carr. & Marsh., 218; *Allen v. State*, 40 Ala., 334; *Williams v. State*, 55 Ga., 391; *Eggington's Case*, 2 East's P. C., 666.

Attorney General *Otto Kirchner* for the People.

COOLEY, J.   My brethren are of the opinion that the
recorder erred in his rulings in the reception of evidence
in two particulars:

*First,* When he overruled the question put to the
witness Webb, on cross-examination, whether he had not
had some transactions with the defendant, wherein he
had put in some false swearing for him or for the par-
ties; and,

*Second,* When he excluded the evidence sought from
the witness, Dunnebacke, to show that there was noth-
ing unusual or necessarily suspicious in defendant's being
where he was seen in company with Moylan.

Webb was an important and necessary witness in the
case, and the conviction of defendant must, so far as
we can understand from this record, have depended
upon the belief of the jury in his evidence to conversa-
tions had with the defendant.   That evidence was open
to unfavorable inferences; and without saying that such
inferences should have been drawn, my brethren think
the recorder should have permitted very searching cross-
examination under the circumstances.   If he testified
truly, he was apparently conniving at and assisting in
the crime charged; and though he may have done this,
as he says, not by way of enticing defendant into crime,
but only by allowing him the opportunity he sought and
requested, yet it placed him in an equivocal position, and
the jury ought to have had the benefit of all the light
the former dealings of the parties would have thrown
upon the transaction.   And although a question to the
witness which implied rascality in the defendant himself
as well as the witness seems extraordinary, yet it may
have tested the credibility of the witness as well as any
other; and his credibility in the case was quite as much
involved as the defendant's guilt.

The purpose of Dunnebacke's evidence was to remove
the unfavorable impressions which might be drawn from
defendant and Moylan being seen together at a particu-
lar spot near the place of the burglary and but a little

while before.   It is said on behalf of the prosecution that no importance was attached to the place of their meeting,. but my brethren think the jury would have been likely to attach importance to it, and that evidence showing that there was nothing unusual in his being there, might have been useful to him and should have been received.

This being the view of the majority of the court, the judgment will be reversed and a new trial ordered. .

GRAVES, J., concurred.

MARSTON, J.   I concur in the opinion of my brother Cooley in this case.   I cannot, however, silently permit the extraordinary course adopted by the police officers in this case to pass unnoticed and uncondemned.

It appears that the respondent applied to John F. Webb, a policeman who was in charge of the police court in the city of Detroit, and requested him to leave the door of said court room unlocked, as he, Saunders, wanted to get in there to get the O'Neil bonds, and that he, Saunders, would pay Webb for so doing.   That in reply thereto Webb informed him that he would consider the matter; that he, Webb, then called upon his superior officer and communicated to him what had taken place; that the latter told Webb to say to respondent he, Webb, would do as desired; that on the same afternoon Webb saw respondent and told him he would leave the door open; that Captain Girardin (the superior officer), detective Sullivan and Webb posted themselves that night in the office of the clerk of the police court, and while they were there, Benjamin D. Moylan opened the door and entered, and while there they arrested him.

It does not, with sufficient clearness, appear what authority Webb or his superior officer had in the office in question, so that the case as it now stands does not, I think, come within the decisions referred to.

The course pursued by the officers in this case was

utterly indefensible. Where a person contemplating the commission of an offense approaches an officer of the law, and asks his assistance, it would seem to be the duty of the latter, according to the plainest principles of duty and justice, to decline to render such assistance, and to take such steps as would be likely to prevent the commission of the offense, and tend to the elevation and improvement of the would-be criminal, rather than to his farther debasement. Some courts have gone a great way in giving encouragement to detectives, in some very questionable methods adopted by them to discover the guilt of criminals; but they have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who may, under a mistaken sense of duty, encourage and assist parties to commit crime, in order that they may arrest and have them punished for so doing. The mere fact that the person contemplating the commission of a crime is supposed to be an old offender can be no excuse, much less a justification for the course adopted and pursued in this case. If such were the fact, then the greater reason would seem to exist why he should not be actively assisted and encouraged in the commission of a new offense which could in no way tend to throw light upon his past iniquities, or aid in punishing him therefor, as the law does not contemplate or allow the conviction and punishment of parties on account of their general bad or criminal conduct, irrespective of their guilt or innocence of the particular offense charged and for which they are being tried. Human nature is frail enough at best, and requires no encouragement in wrong-doing. If we cannot assist another and prevent him from violating the laws of the land, we at least should abstain from any active efforts in the way of leading him into temptation. Desire to commit crime and opportunities for the commission thereof would seem sufficiently general and numerous, and no special efforts would seem necessary in the way of encouragement or assistance in that direction.

CAMPBELL, C. J.   I concur with my brethren, Judges
Cooley and Marston, in their views of this case.   Assum-
ing that there is not in the record full evidence of such
an invitation to enter the clerk's office as would conclu-
sively show there was no breaking, the encouragement
of criminals to induce them to commit crimes in order
to get up a prosecution against them, is scandalous and
reprehensible.