PEOPLE v FALKNER

OPINION OF THE COURT

1. CRIMINAL LAW—HOMICIDE—MURDER—EVIDENCE—PHOTOGRAPHS—
PREJUDICE—ALIBI—APPEAL AND ERROR.

Admitting photographs of the victim into evidence in a case in
which the defendant was charged with murder was reversible
error where defendant's appropriately filed notice of alibi and
his consistent reliance on alibi as his defense, coupled with the
unrebutted proof that the victim was killed by a shotgun blast,
rendered the use of these photographs neither substantially
necessary nor instructive to show material facts or conditions
and there was no other reason for their use than to excite
passion and prejudice.

2. EVIDENCE—ADMISSIBILITY—PHOTOGRAPHS—JURY—APPEAL AND ER-
ROR.

If photographs are erroneously admitted, it is likewise erroneous
to provide them to the jury during deliberations.

3. WITNESSES—EXAMINATION—CROSS-EXAMINATION—PRIOR ARRESTS—
HIGHER CHARGES—PRIOR CONVICTIONS.

No inquiry may be made regarding prior arrests or charges
against a witness in the examination or cross-examination of
such witness which did not result in conviction; neither may
such witness be examined with reference to higher original
charges which have not resulted in conviction, whether by plea
or trial.

CONCURRING OPINION

T. E. BRENNAN, WILLIAMS, and M. S. COLEMAN, JJ.
See headnote 3.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 29 Am Jur 2d, Evidence § 798.
[2] 30 Am Jur 2d, Evidence § 1105.
[3] 58 Am Jur, Witnesses § 734 *et seq.*

4. CRIMINAL LAW—HOMICIDE—EVIDENCE—BURDEN OF PROOF—REA-
SONABLE DOUBT—PHOTOGRAPHS—APPEAL AND ERROR.

*Introduction of photographs of the victim in a murder trial was
not reversible error as the prosecutor should be given latitude
within the rules to prove his case because he is under the
burden of proving his case beyond a reasonable doubt and if
there is any lingering uncertainty that he may not have
legitimately made his most persuasive case to the jury, the
people are entitled to the benefit of the prosecutor's best
judgment, which is, of course, subject to the instant review of
the trial judge.*

Appeal from Court of Appeals, Division 2, Dan-
hof, P. J., and Bronson and O'Hara, JJ., affirming
Jackson, Gordon W. Britten, J. Submitted April 4,
1973. (No. 12 April Term 1973, Docket No. 53,851.)
Decided July 25, 1973.

36 Mich App 104 reversed.

Roy E. Falkner, Jr., was convicted of first-degree
murder. Defendant appealed to the Court of Ap-
peals. Affirmed. Defendant appeals. Reversed and
remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Bruce A. Barton,*
Prosecuting Attorney, and *Jerry M. Engle,* Assist-
ant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *David A.
Goldstein, Daniel Seikaly* and *Roger L. Wotila),* for
defendant on appeal.

T. M. KAVANAGH, C. J. After dark in the evening
of August 20, 1968, Ernest Rothoeler left his wife
on the front porch to close the door of his garage
at the rear of the house. A short while later a
blast was heard by Mrs. Rothoeler. Mr. Rothoeler
was found by his wife on the floor between the

back porch and the kitchen dying from a shotgun wound.

Defendant was later arrested and charged with murder on the basis of information supplied by an undisclosed informant and two detained material witnesses who had described defendant's conduct on August 20, 1968.

Defendant was allegedly visiting with two young ladies in an apartment near the Rothoeler home when he invited Miss Edmond to shoot his gun. The two went into an alley where they saw a flashlight beam. According to Miss Edmond, defendant stopped and said, "Let's shoot this man." Miss Edmond continued to walk until she heard a shot. She then returned to the apartment. Shortly defendant returned to the apartment and announced, "I think I shot someone." Defendant's jury trial resulted in his conviction of first-degree murder.

The Court of Appeals affirmed (36 Mich App 101 [1971]). We granted leave (388 Mich 753 [1972]).

Defendant raises numerous issues which we condense to essentially four:

1. Did the trial court commit reversible error by allowing photographs of the victim into evidence?

2. Did the trial court commit reversible error in *sua sponte* providing the jury with these photographs in the jury room?

3. Did the trial court commit reversible error in allowing the prosecutor to discuss prior arrests of the alibi witnesses?

4. Did the trial court commit reversible error in stating the sentence was up to the judge only?

1. Defendant argues that the admission of photographs of the victim was reversible error. The exhibits complained of consist of one pre-autopsy photo and six photos of the deceased as he was

found at the scene. Only one objection was posed by defendant to the admission of these photographs. His objection, addressed to exhibit 3, was that the "blood trail" was not proven to be decedent's. The trial court noted the objection and admitted these photos only to show what the officers had found at the scene.

Defendant conducted the majority of his own defense, making opening and closing statements and cross-examining the prosecutor's witnesses. His court appointed counsel only handled the examination of defense witnesses. The decision to admit these photographs must stand or fall on its own merits.

The prosecutor cites at least six reasons to justify the introduction of the photographs:

1. To prove that death was unnatural.

2. To prove the weapon used was a shotgun.

3. To prove where the victim was when shot.

4. To prove the distance of the victim from the shotgun.

5. To prove the wound pattern.

6. To prove no intervening cause of death.

Recalling our discussion in *People v Eddington,* 387 Mich 551, 562–563 (1972) we must determine whether these photographs were "substantially necessary or instructive to show material facts or conditions," or merely "calculated to excite passion and prejudice."

Defendant's appropriately filed notice of alibi and his consistent reliance on alibi as his defense, coupled with the unrebutted proof that Mr. Rothoeler was killed by a shotgun blast, rendered the use of these photographs neither substantially necessary nor instructive to show material facts or conditions. We can find no other reason for their use than to excite passion and prejudice. There-

fore, we conclude that it was reversible error to admit the photographs into evidence.

2. Our holding with respect to the first issue dictates the resolution of defendant's second assertion of error. If photographs are erroneously admitted, it is likewise erroneous to provide them to the jury during deliberations.

3. Defendant asserts error in the cross-examination of two of his alibi witnesses. The first instance involved defense witness Ardell Robinson:

"*Q.* Have you ever been convicted of a criminal offense?

"*A.* Have I ever been convicted of a criminal offense?

"*Q.* Yes.

"*A.* No.

"*Q.* In the year 1967, weren't you convicted of the offense of receiving stolen property here in Jackson, Michigan?

"*A.* Oh, if that is what you mean. I am sorry. I misunderstood. I was placed on probation. I figured if I had been convicted I'd be doing time in Southern Michigan Prison.

"*Q.* I see. I see. *You were charged with unarmed robbery and eventually convicted of receiving stolen property, is that correct?*

"*A.* This is correct." (Emphasis added.)

The second involved defense witness Kenneth Brown:

"*Q.* Mr. Brown, do you have any previous criminal convictions prior to the disturbing peace conviction?

"*A.* Yes.

"*Q.* What was that, please?

"*A.* It was receiving stolen property.

"*Q.* *You were charged with unarmed robbery and pled guilty to receiving stolen property, is that correct?*

"*A.* That charged was dropped.

"*Q.* That was the original charge?

"*A.* Yes, but it was dropped.

"*Q.* And, you pled guilty in that same case to receiving stolen property?

"*A.* Stolen goods." (Emphasis added.)

No objections were made to either of these questions.

Defendant points out that *People v Brocato,* 17 Mich App 277, 302–303 (1969), holding it error to inquire into a defendant's prior arrests without conviction, was made applicable to witnesses by *People v James,* 36 Mich App 550 (1971). He further cites *People v Peabody,* 37 Mich App 87 (1971) as extending this rationale to defendants who either plead to or are found guilty of an offense lesser than that originally charged.

He would now have us take the last step and apply the *"Brocato-Peabody"* doctrine to witnesses in the form of a so-called *"James-Falkner"* rule.

Tracing the roots of the doctrine as last cited by us in *People v Eddington,* 387 Mich 551, 566 (1972), we find that several rationales seem to have been considered in the cases which we examine, *infra:*

1. Collateral impeachment of a witness by direct testimony of another witness has been considered improper.

2. Questioning regarding arrests which did not result in conviction has been deemed improper.

3. Not limiting the scope of cross-examination has been deemed an abuse of trial court's discretion.

4. Attempted impeachment after the witness has denied the prior charge has been held improper as being collateral.

The earliest cited case discussing the matter seems to be *Wilbur v Flood,* 16 Mich 40 (1867)

wherein the defendant in a replevin action was allowed to be cross-examined regarding his prior confinement in the state prison. Justice CAMPBELL, speaking for the Court said:

"It is claimed to have been erroneous, as an attempt to discredit the witness by improper means, and to prove by parol what rests in record evidence. We do not think the objection tenable. It has always been found necessary to allow witnesses to be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability. To this end a large latitude has been given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character. This may be useful in enabling the court or jury to comprehend just what sort of person they are called upon to believe, and such a knowledge is often very desirable. It may be quite as necessary, especially where strange or suspicious witnesses are brought forward, to enable counsel to extract from them the whole truth on the merits. It cannot be doubted that a previous criminal experience will depreciate the credit of a witness to a greater or less extent, in the judgment of all persons, and there must be some means of reaching this history. The rules of law do not allow specific acts of misconduct, or specific facts of a disgraceful character, to be proved against a witness by others. He may be proved by record evidence to have been convicted of infamous crimes, but not to have done other infamous deeds, nor to have undergone personal disgrace. And even as to previous conviction of infamous crimes, the rule is seldom of any great service, because no one can be expected to know in advance what witnesses may appear, nor what may have been their history. Unless the remedy is found in cross-examination, it is practically of no account.

"It has always been held, that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents.

The court has a discretion as to how far propriety will allow this to be done in a given case, and will, or should, prevent any needless or wanton abuse of the power. But within this discretion we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility, and it is certain that proof of punishment in a state prison may be an important fact for this purpose. And it is not very easy to conceive why this knowledge may not be as properly derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than truth will warrant. There can with him be no mistakes of identity. If there are extenuating circumstances, no one else can so readily recall them. We think the case comes within the well established rules of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian." 16 Mich 40, 43–45.

That opinion thus stands for the proposition that prior prison confinement may be inquired into and need not be proved by direct documentary evidence.

Two years later Justice COOLEY stated in *Clemens v Conrad,* 19 Mich 170, 174–175 (1869):

"The right to inquire of a witness, on cross-examination, whether he has not been indicted and convicted of a criminal offense, we regard as settled in this State by the case of *Wilbur v Flood,* 16 Mich 40. It is true that in that case the question was, whether the witness had been confined in State prison; not whether he had been convicted; but confinement in State prison presupposes a conviction by authority of law, and to justify the one inquiry and not the other would only be to uphold a technical rule, and at the same time point out an easy mode of evading it without in the least obviating the

reasons on which it rests. We think the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight, that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent. We prefer the early English rule on this subject: *Priddle's case, Leach C. L.* 382; *King v Edwards, 4 T. R.* 440; and for the reasons which were stated in *Wilbur v Flood."*

Finding its way into the law of criminal procedure, this rule allowing examination into prior convictions somehow underwent transformation. In *People v Foote,* 93 Mich 38, 40 (1892), the Court made the following incredulous jump from *convictions* to *indictments:*

"The third objection is ruled by the following cases: *Wilbur v Flood,* 16 Mich. 40; *Clemens v Conrad,* 19 Id. 170. In the latter case the question, 'Were you indicted in 1865 in Sandusky for smuggling?' was held competent. Foote was a witness in his own behalf, and the inquiry was competent, as bearing upon the credibility of the witness. The reason for such inquiry is very clearly stated in *Wilbur v Flood."*

However, probably the most often cited case in support of allowing inquiry into arrests, as distinguished from arrests and convictions is *Hamilton v People,* 29 Mich 173 (1874). Therein, Justice CAMPBELL made the statement which has apparently led to the aberrant rule which was followed blindly for nearly a century. He said:

"It was not an error to allow a witness to be asked if he had deserted, or another witness to be asked if he had been charged with crime. There was no attempt to impeach by contradiction on these collateral matters, and the answers were admissible." 29 Mich 173, 183.

Dutifully following that unsupported statement in *Hamilton, supra,* combined with the rule of *Wilbur v Flood, supra,* and *Clemens v Conrad, supra,* the Court said in *Driscoll v People,* 47 Mich 413, 416–417 (1882):

"Several errors are also alleged, arising out of inquiries concerning an arrest formerly made of Algram on a criminal charge. Having answered on cross-examination that he had been charged jointly with a cousin, before a justice of the peace, with robbing a trunk in his uncle's house, he explained under objection the statements made by the complaining witness as to his innocence, and also explained the transaction, as not inculpating him in any way, and that he was not proceeded against as the thief. Driscoll introduced as a witness one of the police who testified to the arrest of Algram, and his subsequently being as he supposed in his constructive custody, although allowed to be at large. On cross-examination the officer was allowed, under objection, to explain the purposes and circumstances of the arrest and release, and among other things to mention the complaining witness' statement that she knew he was innocent, and did not desire or propose to prosecute him. This exculpatory testimony was objected to.

"There is no rule which will allow the credit of a witness to be impeached or assailed by the direct testimony of other witnesses to any criminality or charge of criminality, unless he has actually been adjudged guilty. And this can only be shown by a record of a judgment. *Smith v Brown* 2 Mich. 162 [1851]; *Dickinson v Dustin* 21 Mich. 561 [1870].

"A witness may be asked on cross-examination within the proper discretion of the court, not only concerning his conviction, but also concerning any serious charge brought against him. *Wilbur v Flood,* 16 Mich. 40;

*Clemens v Conrad,* 19 Mich 170; *Hamilton v People,* 29 Mich 173.

"Very great latitude is sometimes necessary in cross-examination, and we have no doubt it was entirely proper in this case to permit Algram to be fully questioned. *Chandler v Allison* 10 Mich 460 [1862]; *Jacobson v Metzger* 35 Mich 103 [1876]; *Saunders v People* 38 Mich 218 [1878]. But it would be grossly unjust to refuse a witness the benefit of any explanation that may affect the inferences that might otherwise be drawn from a criminal arrest. Such an arrest is no evidence of crime, but is nevertheless more or less calculated unexplained to prejudice the credit of the witness who admits it, and it was entirely proper to allow the circumstances to be shown, and to let it appear that the only responsible complainant did not mean to accuse the witness. *Saunders v People* 38 Mich 218; *Arnold v Nye* 23 Mich 286 [1871].

"It is not proper to allow a witness to be contradicted on collateral questions not admissible as direct evidence. *Dunn v Dunn* 11 Mich 284 [1863], *Fisher v Hood* 14 Mich 189 [1866]; *Hamilton v People* 29 Mich 173; *Hitchcock v Burgett* 38 Mich 501 [1878].

"As already stated the question whether the witness had ever been arrested was one which was collateral, and could not be used directly from other witnesses against him to impeach him. It was therefore improper to receive the officer's testimony to attack him, but having been received, it was proper to allow the explanation which removed the obloquy."

Adding to the already confused state of the rules, the Court, in *People v Statkiewicz,* 247 Mich 260, 267 (1929), added without citation the consideration of the extension of cross-examination as being a matter of discretion.

One more addition, *People v MacCullough,* 281 Mich 15, 27 (1937), which relied solely upon *Hamilton v People, supra,* made the full complement of parameters by which such cross-examination was to be measured:

"One may be asked if he has been charged with crime
and his answers are admissible although, if the witness
denies such accusation has been made, he may not be
impeached because such matters are collateral."

Thus, when the Court decided *People v Foley,*
299 Mich 358, 363 (1941), it threw in everything:

"We are not dealing with the testimony of other
witnesses introduced to impeach the credibility of a
given witness, but with the testimony on cross-examina-
tion used to impeach testimony on direct examination
of the same witness. Under the circumstances, it was
within the discretion of the trial judge to permit cross-
examination of this character within reasonable
bounds. They were not exceeded; nor was there any
abuse of discretion.

" 'One may be asked if he has been charged with
crime and his answers are admissible although, if the
witness denies such accusation has been made, he may
not be impeached because such matters are collateral.'
*People v MacCullough,* 281 Mich. 15, 27.

"See, also, as to the permissibility of impeaching a
witness on cross-examination by questions as to previ-
ous arrests, *Hamilton v People,* 29 Mich 173; *People v
Foote,* 93 Mich 38; *People v Statkiewicz,* 247 Mich 260."

Little wonder is it that the statement in 1
Gillespie, Michigan Criminal Law & Procedure (2d
ed), § 436, p 534, has come to be recognized as the
Michigan rule. The claimed support for the state-
ment seems to be the very line of authorities we
have already discussed. However, as close scrutiny
of the cases reveals, they are neither singularly
nor collectively supportive of the following empha-
sized portion of Gillespie's statement of the rule:

"A witness may be asked on cross-examination,
within the sound discretion of the court, not only
concerning a previous conviction, *but also as to any
serious charge brought against him whether he has*

*been indicted, indicted but not convicted, or arrested
and confined in the state prison for another offense.*
Where a defendant takes the stand in his own behalf he
is subject to the same rules as to cross-examination as
any other witness even though it may show him to be
guilty of the commission of another offense." (Emphasis
added.)

No support may be found in the statutes either.
The present provision, MCLA 600.2158; MSA
27A.2158, is as follows:

"No person shall be excluded from giving evidence on
any matter, civil or criminal, by reason of crime or for
any interest of such person in the matter, suit, or
proceeding in question, or in the event of such matter,
suit or proceeding, in which such testimony may be
offered, or by reason of marital or other relationship to
any party thereto; *but such* interest, relationship, or
*conviction of crime, may be shown for the purpose of
drawing in question the credibility of such witness,*
except as is hereinafter provided." (Emphasis added.)

The following provision, MCLA 600.2159; MSA
27A.2159 likewise speaks of *convictions:*

"On the trial of any issue joined, or in any matter,
suit or proceeding, in any court, or on any inquiry
arising in any suit or proceeding in any court, or before
any officer or person having by law, or by consent of
parties, authority to hear, receive, and examine evi-
dence, the parties to any such suit or proceeding named
in the record, and persons for whose benefit such suit or
proceeding is prosecuted, or defended, may be witnesses
therein in their own behalf or otherwise, in the same
manner as other witnesses, except as hereinafter other-
wise provided; and the deposition of any such party or
person may be taken and used in evidence under the
rules and statutes governing depositions, and any such
party or person may be proceeded against and com-
pelled to attend and testify, as is provided by law for

other witnesses. No person shall be disqualified as a witness in any civil or criminal case or proceeding by reason of his interest in the event of the same as a party or otherwise or by reason of his having been convicted of any crime; *but such interest or conviction may be shown for the purpose of affecting his credibility.* A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." (Emphasis added.)

The first break with this ill-conceived rule allowing inquiry into prior arrests was *People v Brocato, supra,* wherein Judge J. H. Gillis candidly admitted misreading *People v Foley, supra.* Consideration was then directed to the fact that *Foley* dealt not with credibility impeachment but rather testimonial impeachment. However, viewed either way, the real purpose was to discredit the witness by discussing arrests.

It is our conclusion that the *Brocato, James* and *Peabody* cases are fully supported by their apparently long forgotten nineteenth century antecedents. The illegitimate progeny of the intervening decades state rules of law for which no legitimate support may be found.

We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial.

In light of our resolution of the issue above, we need not reach the other issues presented at this time.

Reversed and remanded for a new trial.

T. G. Kavanagh, Swainson, and Levin, JJ., concurred with T. M. Kavanagh, C. J.

Williams, J. *(concurring).* The Chief Justice has well and comprehensively analyzed the proper rule re examination or cross-examination of any witness regarding prior arrests or charges against such witness which did not result in conviction. I concur completely with his reasoning and result in this the major part of the case, and with the overall result as well.

On the less significant and ad hoc issue of admission of death photographs, I tend to agree with the Chief Justice to the extent I believe that there was some evidentiary redundancy, certainly all the photographs were not necessary. On the other hand, I feel that the prosecutor should be given reasonable latitude within the rules to prove his case. It is true that in this case the circumstances of death were reasonably well proven by oral evidence. However, the prosecutor is under the burden of proving his case beyond a reasonable doubt. If there is any lingering uncertainty that he may not have legitimately made his most persuasive case to the jury, it seems to me the people are entitled to the benefit of the prosecutor's best judgment, which is, of course, subject to the instant review of the trial judge.

Obviously, the decisions of the trial judge are subject to appellate review. Here where the trial judge's decision is so necessarily a subjective one and the prosecutor's judgment likewise circumscribed more by subjective good taste than hard and fast objective standards, and since what evidence is required to make a case may appear very different from hindsight than in the course of the

trial, I am reluctant in most cases of the admissibility of photographs to upset, after the fact, the judgments of the prosecutor and trial judge on the firing line. As a consequence, I would respectfully disagree to the extent indicated, and I am unable to concur in finding reversible error with respect to the introduction of the photographs.

T. E. BRENNAN and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.