*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 16, 2020

Plaintiff-Appellee,

v

No. 345748
Genesee Circuit Court
LC No. 16-039732-FC

FRANK JAMES NEAL,

Defendant-Appellant.

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of assault with intent to murder (AWIM), MCL 750.83, and four counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to serve two years' imprisonment for the felony-firearm convictions, consecutive to 15 to 22.5 years' imprisonment for the AWIM convictions. Defendant appeals by right. We vacate defendant's convictions and sentences, and remand for a new trial.

## I. FACTUAL BACKGROUND

In May 2016, defendant was living in a house with his two adult sisters. One of defendant's sisters was in a relationship with Damontae Davis. On May 23, 2016, defendant's sister was involved in a heated argument with Davis on the front porch of her house. At one point, defendant tried to intervene and was involved in a fistfight with Davis, who walked away down the street. Davis eventually was picked up by his cousin, Brandon Smith, who was in a car with Davis's cousins Edris Thomas and Christopher Turner as well as Smith's friend Anton Bruce. All of the men testified they were unarmed. The men drove back to the house and gathered on the front lawn while Davis resumed arguing with his girlfriend. Defendant testified that he heard voices outside, grabbed his rifle, stepped out of the side door of the house, and fired three to four warning shots into the air. Davis and the other men on the lawn scattered. Smith was shot in the back with birdshot, which permanently paralyzed him. Turner was shot in the leg with a different unidentified bullet. Several witnesses testified that they heard two different types of guns being fired, but could not identify the second shooter. Several witnesses identified a heavyset black male

-1-

shooting into the crowd of people. Officers discovered defendant's rifle and a shotgun hidden under the porch of the vacant house next door.

At trial, defendant testified that he initially lied to police about firing the rifle because he had never been in trouble before. On cross-examination, the prosecutor introduced evidence that defendant had been arrested multiple times for domestic violence. The prosecutor also attempted to introduce evidence that defendant only changed his story to police when he was confronted with DNA evidence during a second interview. However, defense counsel pointed out that no investigator had ever confronted defendant with DNA evidence. The prosecutor apologized, and the jury was instructed at the end of trial to disregard the line of questioning. Defendant also testified that he believed there were two unidentified shooters involved that day. The prosecutor repeatedly stated on cross-examination that no witness had offered such testimony. However, one witness testified that he saw someone pull up to the street corner and shoot before running away and another witness testified that she saw the men in the car threaten the family on the porch with guns. The jury deliberated for approximately five and a half hours before finding defendant guilty of all charges.

## II. ANALYSIS

We hold that the prosecutor's conduct was plainly erroneous, was not cured, and prejudiced defendant's credibility to the point that it denied him the right to a fair and impartial trial.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Bryan Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant objected to the prosecutor's mischaracterization of the second police interview with defendant. Therefore, this issue is preserved. However, defendant did not object to the prosecutor's references to his prior arrests or the prosecutor's mischaracterization on cross-examination that no witness had testified about seeing someone run from the scene with a gun. Therefore, these issues are unpreserved.

We review de novo preserved issues of prosecutorial misconduct. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Craig Gordon Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). The defendant must show that such an error occurred and that it resulted in a miscarriage of justice. *Id*. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

The prosecutor's conduct in this case was plainly erroneous, and it prejudiced defendant's credibility and denied defendant the right to a fair and impartial trial. In general, prosecutors "have a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). Prosecutorial error occurs when a prosecutor makes a technical or inadvertent error at trial. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). The test for prosecutorial error is whether a defendant was denied a fair trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). By comparison, claims of prosecutorial misconduct are reserved for "those extreme—and thankfully rare—instances

where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *Cooper*, 309 Mich App at 88.

The prosecutor first erred by inquiring into the nature of defendant's prior arrests on cross-examination. "[I]n the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction." *People v Falkner*, 389 Mich 682, 695; 209 NW2d 193 (1973). An unproven charge may not be offered to impeach a witness, but may be offered for other purposes, such as "to show the witness' interest in the matter, his bias or prejudice, or his motive to testify falsely because that witness has charges pending against him which arose out of the same incident for which defendant is on trial." *People v Yarbrough*, 183 Mich App 163, 164-165; 454 NW2d 419 (1990).

It is clear from the record that the prosecutor brought up evidence of defendant's prior arrests to impeach defendant's statement that he had never been in trouble before, which is prohibited under *Yarbrough. Id.* There is no indication from the record that defendant's prior arrests for domestic violence demonstrated any bias, prejudice, or motivation to falsify testimony at trial, which would have been admissible. The effect of introducing this evidence was highly prejudicial because it could invite jurors to make the impermissible character inference that defendant was a "bad person" for committing previous crimes and therefore was more likely to commit crime again. See *People v Bass*, 317 Mich App 241, 262; 893 NW2d 140 (2016).

The prosecution's argument that defendant opened the door to being asked the question lacks merit because her questions went beyond the scope of rebuttal. "[T]he test of whether rebuttal evidence was properly admitted is . . . whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996). For example, in *People v Yager*, 432 Mich 887; 437 NW2d 255 (1989), the Michigan Supreme Court held that a defendant's reference to the prosecution's threat to charge him as a habitual offender did not "open the door" to extensive questioning about his criminal history. Similarly, in this case, defendant's statement that he had not been in trouble before did not open the door to extensive questioning about the nature of his prior arrests. Defendant claimed that he had not been in trouble before in the context of explaining why he lied to the police. However, the prosecutor continued to question defendant about whether he had committed assaultive offenses and whether he considered domestic violence to be assault, which went beyond the permissible scope of rebuttal. Therefore, the prosecutor's conduct was plain error.

The prosecutor next erred by repeatedly mischaracterizing defendant's second interview with police. "An attorney may not refer to facts that are not in the record." *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). In this case, the prosecutor repeatedly insinuated on cross-examination that defendant only changed his story when confronted with the results of the DNA testing. In fact, the DNA test results were never mentioned in any police interview. Because the prosecutor's questions were entirely unfounded, the line of questioning was plainly erroneous and prejudiced defendant by implying that he only changed his story when confronted with DNA evidence.

Although the trial court later issued an instruction to the jury to disregard the prosecutor's line of questioning, this instruction did not cure the error. "Jurors are presumed to follow their

instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). However, a belated curative instruction does not always cure an error. For example, in *People v Musser*, 494 Mich 337, 364; 835 NW2d 319 (2013), our Supreme Court determined that a jury instruction did not cure the risk of an error when it was not given until an hour after the inadmissible testimony. In this case, the jury was given the limiting instruction a full day after it heard defendant's testimony, during which time the jury was presented with another witness and closing statements. Therefore, the error was not fresh enough in the jury's minds for the limiting instruction to cure the error.

Finally, the prosecutor's mischaracterization of prior witness testimony was plainly erroneous. "[A] prosecutor may not argue facts not in evidence or mischaracterize the evidence presented . . . ." *Watson*, 245 Mich App at 588. In this case, the prosecutor continuously asserted that there was no testimony that any of the men running away were armed or that anyone fired back at defendant. However, one witness testified that he saw a person who appeared to be shooting from the street run away, and another testified that a group of men pulled up to the house and pointed guns at defendant's family. This mischaracterization of witness testimony was plainly erroneous and implied that defendant's testimony was unsupported by other witness accounts.

Errors are considered harmless when it is "highly probable that the errors did not contribute to the verdict." *People v Mitchell*, 231 Mich App 335, 339; 586 NW2d 119 (1998). However, "the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). "[T]he effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).

In this case, defendant's defense primarily rested on whether the jury believed his contention that he fired his rifle in the air. Unfortunately for defendant, the prosecutor's many errors undermined his credibility. The prosecutor implied that defendant had a propensity for violence, that he only changed his story when he was confronted with DNA evidence, and that no other testimony corroborated defendant's account of events. There is no doubt that this erroneous presentation of evidence undermined defendant's testimony, injected prejudice, and affected the jury's verdict. Therefore, the prosecutor's errors denied him a fair and impartial trial.[1]

We vacate defendant's convictions and sentences, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher

---

[1] In light of our resolution of this issue, we need not address defendant's other arguments.