*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

UNPUBLISHED
November 9, 2021

v

No. 352263
Saginaw Circuit Court
LC No. 19-045854-FH

NATHAN GREGORY MCWHERTER,

       Defendant-Appellant.

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(c) (sexual contact under circumstances involving the commission of another felony).[1]  The trial court sentenced defendant to concurrent sentences of 86 months' to 15 years' in prison for each count, with credit for 320 days served.  On appeal, defendant argues that there was insufficient evidence to sustain his convictions, the prosecution engaged in misconduct, there was evidentiary error, his counsel was ineffective, and he was sentenced on the basis of inaccurate information.  We reverse and remand for a new trial.

## I.  FACTS AND PROCEEDINGS

Defendant was charged with engaging in sexual contact with two victims, OW and MC, when they were 13 years old.  The alleged assaults occurred on separate occasions when the victims were spending the night at the home of their friend, CN.  Defendant lived in the same home and was the boyfriend of CN's mother, Erin.  OW testified that, in the summer of 2017, while staying at CN's house, defendant gave her marijuana.  She later awoke to discover defendant touching her breast and vagina, and placing her hand on his penis.  He also photographed her

---

[1] The jury acquitted defendant of two counts of fourth-degree criminal sexual conduct, MCL 750.520e(1)(a) (victim is between 13 and 16 years old, and defendant is 5 or more years older than victim).

breasts. MC testified that, in the summer of 2018, also while staying at CN's house, she awoke to find defendant touching her breast and vagina.

At trial, defendant testified and denied the allegations. As to MC, defendant contended that he was attempting to retrieve a charger from the couch where she was sleeping. As to OW, defendant denied providing OW with marijuana to smoke, testifying that she brought her own. And, during police questioning, defendant described potentially grazing OW's breast accidentally. While defendant, OW, and CN were watching movies, his arm was on the back of the couch, but it fell forward after he fell asleep.

The defense also presented testimony from other witnesses, including CN and Erin, who disputed some of the details provided by the victims. The defense's theory was that the victims fabricated the allegations in order to hurt CN.

Although the police executed a search warrant pertaining to the electronic devices in the home, they did not locate the photographs OW described. However, a substantial time had passed between the alleged assault and the execution of the warrant so that any photographs could have been deleted or destroyed. Furthermore, the police could not access all the devices.

After one day of jury selection and two days of testimony, the jury deliberated for several hours over two days and convicted defendant of the charges involving OW, but found him not guilty of the charges involving MC. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions of CSC-II because the sexual contact did not occur under circumstances involving the felonious delivery of marijuana to a minor. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). This Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. Conflicting evidence and disputed facts are to be resolved by the trier of fact." *Id*. (citations omitted). In addition, "[m]inimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *Id*.

MCL 750.520c(1)(c) provides that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and . . . [s]exual contact occurs under circumstances involving the commission of any other felony." " 'Sexual contact' means 'the intentional touching of the victim's or [defendant's] intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . .' " *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016) (alterations in original), quoting MCL 750.520a(q). " 'Intimate parts' include a person's 'genital area, groin, inner thigh, buttock, or breast.' " *DeLeon*, 317 Mich App at 719, quoting MCL 750.520a(f).

The alleged felony in this case was delivery of a controlled substance (marijuana) to a minor under MCL 333.7410(1), which provides:

> Except as otherwise provided in subsections (2) and (3), an individual 18 years of age or over who violates section 7401(2)(a)(*iv*) by delivering or distributing a controlled substance listed in schedule 1 or 2 that is either a narcotic drug or described in section 7214(a)(*iv*) to an individual under 18 years of age who is at least 3 years the deliverer's or distributor's junior may be punished by the fine authorized by section 7401(2)(a)(*iv*) or by a term of imprisonment of not less than 1 year nor more than twice that authorized by section 7401(2)(a)(*iv*), or both. An individual 18 years of age or over who violates section 7401 or 7401b by delivering or distributing any other controlled substance listed in schedules 1 to 5 or gamma-butyrolactone to an individual under 18 years of age who is at least 3 years the distributor's junior may be punished by the fine authorized by section 7401(2)(b), (c), or (d) or 7401b, or by a term of imprisonment not more than twice that authorized by section 7401(2)(b), (c), or (d) or 7401b, or both. [Footnotes omitted.]

" '[D]elivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1).

Accordingly, with regard to the CSC-II convictions in this case, the prosecution was required to prove that (1) defendant intentionally touched OW's breast or genital area or made OW touch his penis, (2) for the purpose of sexual arousal or gratification or for a sexual purpose, (3) under circumstances involving the transfer of marijuana to OW. Defendant only challenges the third element.

In *People v Waltonen*, 272 Mich App 678, 691; 728 NW2d 881 (2006), this Court held that, under the parallel language in MCL 750.520b(1)(c) (sexual penetration under circumstances involving a felony), "there must be a sufficient nexus between the underlying felony and the sexual penetration." This Court agreed with an earlier decision of this Court in *People v Jones*, 144 Mich App 1; 373 NW2d 226 (1985), stating:

> We agree with the *Jones* panel that § 520b(1)(c) cannot be construed to require that the sexual penetration occur *during* the commission of the underlying felony; the language of the statute is not so limiting with respect to sequence and is more broadly drafted. The key language of the statute is "occurs under circumstances involving," which does not necessarily demand that the sex act occur during the commission of the felony, although this generally will be the case. But the statutory language does require a direct interrelationship between the felony and the sexual penetration. Here, the delivery of controlled substances technically occurred after the sexual acts; however, the sexual acts were directly related to the delivery of the drugs because the only reason the victim engaged in sexual penetration was to acquire the drugs. Stated somewhat differently, delivery of the drugs was part and parcel of the act of sexual penetration. Before and during the sexual penetration, the victim and defendant were operating under the knowledge and expectation that drugs would be delivered to the victim after the sexual act and

only because of the sexual act. There existed a continuum of interrelated events. [*Waltonen*, 272 Mich App at 692-693 (footnotes omitted).]

In *People v Lockett*, 295 Mich App 165, 178; 814 NW2d 295 (2012) (alteration in original), this Court found it reasonable to conclude that "in enacting MCL 750.520b(1)(c), the Legislature intended that the 'circumstances involving the commission of [the] other felony' directly impact a 'victim,' or recipient, of the sexual penetration." This Court stated:

> This reading is consistent with other cases that have interpreted MCL 750.520b(1)(c). In *Waltonen*, this Court repeatedly referred to the other person as "the victim" of the sexual penetration. *Waltonen*, 272 Mich App at 680-693. In addition, the victim of the sexual penetration was directly impacted by the circumstances of the other felony because the defendant delivered the Oxycontin to the victim. *Id*. at 682, 693. In *People v Pettway*, 94 Mich App 812, 814; 290 NW2d 77 (1980), the defendant was convicted of CSC-I after he broke into a home and sexually penetrated a victim. The victim of the sexual penetration was also a victim of the other felony because the victim was an occupant of the home that the defendant broke into and entered. *Id*. at 818. In *People v Wilkens*, 267 Mich App 728, 736; 705 NW2d 728 (2005), the defendant was convicted of CSC-I after he produced sexually abusive material involving a minor. The penetration "victims" were the children with whom the defendant produced the sexually abusive material. See *id*. at 732, 737-738. The victims of the sexual penetration were also victims of the underlying felony because they were involved in the production of the sexually abusive material. *Id*. [*Lockett*, 295 Mich App at 178-179.]

In this case, there was sufficient evidence that defendant's sexual contact with OW occurred under circumstances involving the delivery of marijuana to OW. OW testified that defendant gave her between 5 and 20 hits of marijuana from a "nectar collector."[2] Before doing so, defendant told OW that they would have "adult problems" if she told anyone else. OW said she became high from the marijuana. At some point, OW, CN, and defendant went inside the main house and continued to smoke marijuana and watch television. They watched television for a few hours and OW fell asleep on the couch. OW awoke when defendant moved her closer to him on the couch. Defendant then touched OW's breast and vagina, and placed her hand on his penis. When the incident was over, it was approximately 5:00 a.m.

Defendant testified that he had researched the use of the nectar collector and smoking wax with high concentrations of THC. A recognized side effect of using marijuana in this manner was sleepiness. Defendant opined that it took between 5 and 8 hits on average "to get sleepy or feel better," "[l]ess with a higher potency." CN also testified that she could have been sleepy from the marijuana, depending on the strain she and defendant used.

While the direct interrelationship between the felony and the sexual contact is not as explicit as in *Waltonen*, the jury could reasonably infer from the evidence that defendant gave OW the marijuana to facilitate the sexual contact. And although the sexual contact occurred after the

---

[2] A nectar collector is a device used to smoke marijuana.

felony, the jury could find that the sexual contact was directly related to the delivery of marijuana. Additionally, the jury could reasonably infer from defendant's statement to OW that they would have "adult problems" if she told anyone about the marijuana that defendant had intended the sexual assault when he gave the marijuana to OW. Again, "[m]inimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *Miller*, 326 Mich App at 735. As in *Waltonen*, the evidence supported a finding that the delivery of marijuana was part and parcel of the sexual contact.

Defendant argues that the delivery was completed hours before the sexual contact, but OW testified that they continued to smoke marijuana inside the house before she fell asleep. The exact amount of time between the delivery of marijuana to OW and the sexual contact is unknown, and the jury could conclude that the evidence established "a continuum of interrelated events." *Waltonen*, 272 Mich App at 693.

Defendant further argues that there was no evidence that the marijuana caused OW to fall asleep or made it affect her ability to reject the sexual contact. Recognizing that OW did not expressly testify that she fell asleep *because of* the marijuana use, she testified that the marijuana affected her. And, viewing the evidence in the light most favorable to the prosecution, both CN and defendant recognized sleepiness was a potential side effect from using the nectar collector to ingest marijuana, depending on its strain or potency. Therefore, a reasonable jury could infer that defendant gave OW the marijuana in order to facilitate the subsequent sexual contact. Accordingly, there was sufficient evidence that defendant engaged in sexual contact with OW under circumstances involving the delivery of marijuana to OW.

## III. OTHER-ACTS EVIDENCE, PROSECUTORIAL MISCONDUCT, AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied a fair trial because of the introduction of improper character evidence and misconduct by the prosecutor. Alternatively, defendant contends that trial counsel was ineffective by failing to object to the improper evidence and conduct or request curative instructions.

## A. PRESERVATION AND STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected to the questions regarding his use of LSD and CN's posting of photographs on Instagram, thereby preserving those claims. However, he did not object to the other allegedly improper character evidence. He also failed to argue below that any notice required by MRE 404(b)(2) was not provided. Therefore, these latter claims are unpreserved.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Bailey*, 330 Mich App 41, 50; 944 NW2d 370 (2019) (quotation marks and citation omitted). "[W]hether a rule or statute precludes admission of evidence is a preliminary question of law that

this Court reviews de novo." *Denson*, 500 Mich at 396. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018), amended 328 Mich App 801 (2019) (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant bears the burden of showing prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

With regard to defendant's claims of prosecutorial misconduct, "[a] defendant must contemporaneously object and request a curative instruction to preserve an issue of misconduct for appellate review." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (quotation marks and citation omitted). Defendant did not object to the alleged instances of prosecutorial misconduct or request a curative instruction. Therefore, this issue is unpreserved. This Court reviews preserved claims of prosecutorial misconduct de novo to determine whether the defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Brown*, 294 Mich App at 382.

Defendant also failed to move for a new trial or evidentiary hearing regarding his claims of ineffective assistance of counsel. Therefore, his ineffective-assistance claims are unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Generally, an ineffective-assistance-of-counsel claim presents a mixed question of fact and constitutional law. Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error. This Court reviews an unpreserved ineffective-assistance-of-counsel claim for errors apparent on the record." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citations omitted).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.*

## B. EVIDENTIARY ERROR

Defendant first argues that the prosecutor improperly introduced evidence of defendant's prior bad acts (1) without proper notice, (2) for an improper character or propensity purpose, and

(3) for which the danger of unfair prejudice substantially outweighed the probative value. Specifically, defendant challenges (1) evidence related to defendant's "sexting" with Erin in the presence of CN and her friends, (2) the evidence related to defendant's criminal record, (3) evidence regarding defendant's use of LSD and an altercation with the police, and (4) evidence of defendant's and CN's prior use of marijuana.[3]

## 1. RELEVANCE AND PREJUDICE

MRE 404(b)(1) governs the admissibility of character evidence and provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"[B]y its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (citation omitted). The acts that defendant challenges on appeal did not evidence the conduct at issue—the sexual contact with the victims—and, thus, fall within the scope of MRE 404(b).

---

[3] Certain of these matters were apparently revealed during defendant's interview with the detective. On the first day of trial, defense counsel indicated that he had received a disc containing the interview the previous day. He noted that there was "some objectionable material on it," namely the mention of "three victims" and a specific comment made several years earlier during the LSD incident. Counsel objected to playing the entire tape and noted "that the tape needs to be redacted a little bit." The prosecutor admitted that she had called defense counsel at the end of the prior week to inform him that she might play the disc. The prosecutor conceded that defense counsel was "correct" that "the whole thing isn't relevant." In fact, at least 17 minutes of the interview were not noteworthy and "most of the stuff [defense counsel's] . . . speaking about wouldn't be what I would put on, anyways." Even so, given that defendant had raised accident as a defense, the prosecutor stated that she "might consider playing the disc for rebuttal purposes." The court specifically inquired if there was any part of the disc that the prosecutor would use if defendant did not testify or claim accident. The prosecutor responded: "Not at this time," again indicating that she did not plan to use the disc "in [her] case in chief," but might use it in rebuttal. The court advised that if it was "going to come in at all," the prosecutor should let defense counsel know how she planned to proceed and see if the parties could work out what should be played. If there was an issue, the court could address it. The disc was marked as an exhibit, but it was not played or admitted. During her case-in-chief, however, the prosecutor explored the sexting activity with the detective.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), the Court stated the standard to be applied to evaluate claims under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

"[T]he prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b)." *People v Edwards*, 328 Mich App 29, 42; 935 NW2d 419 (2019) (quotation marks and citation omitted). "Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *Id.* (quotation marks and citation omitted).

Defendant first argues that the prosecutor improperly elicited testimony regarding an incident in which defendant was "sexting" Erin. This testimony came from Detective Larry Biniecki, defendant, and Erin. While questioning Detective Biniecki, the prosecutor asked whether he spoke to defendant "about anyone touching him." Detective Biniecki testified that defendant told him about a time that he was smoking marijuana with CN before one of her friends arrived. Defendant said he was "stoned" and was "sexting" Erin, but he would flip the phone over so the girl sitting next to him did not see the messages. Defendant admitted that he had an erection and the girl put her hand on his lap. He brushed her hand away, but she put it back on his lap. Detective Biniecki testified that defendant said the girl put "her hand on his pants while he had an erect penis." The prosecutor subsequently asked Erin about this incident. Erin admitted she sent defendant nude photographs and that defendant told her that there were girls sitting next to him in the living room. She believed that defendant would hide his phone or go into another room. The prosecutor asked Erin if she was "aware that [defendant] told Detective Biniecki that one of the girls had reached for his penis," which Erin denied. On cross-examination of defendant, the prosecutor asked whether defendant thought it was appropriate to sit in a room with teenage girls and "sext," and defendant said, "Not entirely." Defendant explained that the girls were not in the room when the "sexting" began and he did not want to get up and walk away with an erection. He did not have a pillow or blanket to cover himself so he remained seated. He admitted that one of the girls touched his lap, but defendant explicitly denied telling the detective that the girl had tried to touch his penis.[4]

---

[4] We recognize that the presentence investigation report states that defendant told the detective that another girl "had put her hand on his penis several times and [he] had to brush her hand away." However, this differs from the testimony and this potential third complainant proved uncooperative with the police investigation. Certainly, if the prosecution possessed evidence that defendant engaged in sexual touching with a third minor, such other-acts evidence may have been admissible under MCL 768.27a and MRE 404(b).

Defendant did not object to any of the prosecutor's questions. On appeal, he argues that this evidence implies that he was a "sexual deviant," that the "sexting" incident had several aspects in common with the incident involving OW, and that the evidence likely caused the jury to assume that he was attracted to adolescent girls. Preliminarily, although the prosecution suggests that the trial prosecutor did not intentionally elicit this evidence, that suggestion is belied by the fact that the trial prosecutor asked additional questions about the incident to both Erin and defendant after Detective Biniecki's testimony.

On appeal, the prosecution does not offer any relevant purpose for this evidence. In the prosecutor's rebuttal closing argument, however, she argued that this incident showed that defendant was "sitting close enough to a girl that she could touch his erect penis while he was sexting Erin" and that this contradicted the defense testimony that defendant was too claustrophobic to have sat next to OW on the couch. Although defense witnesses had testified that defendant was too claustrophobic to have sat in the middle of the couch next to OW, as she described, defendant himself admitted that he was sitting with OW on the couch with his arm extended along its back. Thus, although this evidence was arguably relevant for a noncharacter purpose, the surrounding circumstances were highly prejudicial. *People v Hawkins*, 245 Mich App 439, 447-448; 628 NW2d 105 (2001) ("[T]he balancing test provided by MRE 403 demonstrates that the evidence is more probative of an issue at trial than substantially unfair to the party against whom it is offered . . . ."). In other words, evidence that defendant sat on the couch in close proximity to others directly rebuts the contention that defendant was too claustrophobic to do so without suggesting that defendant knowingly engaged in sexual behavior in the presence of a third minor girl while he was under the influence of marijuana and while CN was present.

Defendant further argues that the prosecutor improperly elicited testimony regarding his criminal record. It is well settled that evidence of a prior conviction may be prejudicial to the accused, the danger being that the jury 'will misuse prior conviction evidence by focusing on the defendant's general bad character . . . .' " *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007), quoting *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). See also MRE 609 (impeachment by a prior conviction). And, although a witness may not be cross-examined about "prior arrests or charges which have not resulted in conviction," *People v Falkner*, 389 Mich 682; 209 NW2d 193 (1973), a witness may be cross-examined about prior convictions or arrests to show the witness's interest or bias in testifying, *People v Layher*, 464 Mich 756, 758, 765 n 5, 768; 631 NW2d 281 (2001).

In this case, on cross-examination, the prosecution specifically asked Erin: "Do you know whether or not [defendant] had any other kind of criminal history?" and "[D]id you know if he had ever been arrested before?" Each question elicited an affirmative response. The prosecutor then asked "And knowing all that, you still allowed him to move in with you and your kids?" Again, Erin, who had been in a relationship with defendant for over six years, answered affirmatively.

On appeal, the prosecution raises no argument that defendant's prior arrest or criminal history were relevant. And although Erin's testimony regarding those matters was certainly brief and unspecific, the prosecutor eventually explored a more recent incident involving an arrest.

On direct questioning by defense counsel, defendant testified that he had performed "a lot of research" into "the effects of consuming marijuana" via the nectar collector. On cross-examination, the prosecutor developed that testimony:

*Q*. You also testified that, prior to getting your card, your marijuana card, you had done a lot of research on marijuana and how drugs affect your body?[5]

*A*. Absolutely.

*Q*. Okay. Had you done other drugs besides marijuana?

*A*. Um, yes, from pharmaceutical to recreational.

*Q*. Okay. And have you had any bad experiences with those?

*A*. I have.

*Q*. Okay. Can you describe a bad experience?

*A*. Um, well, there was—would you narrow that down to a time frame?

*Q*. Sure can. Do you remember when you talked to Detective Larry Biniecki?

*A*. I do.

*Q*. Okay. And you had a conversation with him about the bad effects of drugs?

*A*. Yes.

*Q*. Okay. Does that help refresh your memory?

*A*. Yes, I know what you're talking about now.

*Q*. Okay. And what—this conversation you had with Detective Biniecki, what drug were you on when you were talking about that conversation?

*A*. Well, the circumstances of that situation was I was at a party, a going away party for my friend.

*Q*. I'm going to stop you. When was this in relation to what we're talking about?

*A*. Um, this was maybe three years prior.

---

[5] Again, defendant's direct testimony was limited to marijuana.

*Q.* Okay. Can you give me a year?

*A.* So 2018 minus three would be 2015.

*Q.* Okay.

At that point, defense counsel objected to the relevance of the prosecutor's questions. The prosecutor retorted:

> Your Honor, if I may, he testified that he's done a lot of research in drugs and how they affect his body. And in conversation with Detective Larry Biniecki, he had spoke[n] with him about how this affects his body. And he testified that he thinks he can tell whether or noting [sic] [OW] took too many hits or, you know, if that many hits would have affected her.[6]

The trial court, presumably anticipating testimony relating to marijuana, overruled defense counsel's objection. Defendant then elaborated that, in 2015 or 2016, he was at a party, intoxicated, and experimented with acid.[7] This led to an altercation with the police and defendant ended up in the hospital because of his combativeness with the officers. Defendant further explained that he attempted to run away from the police. Later, the prosecutor asked defendant about his earlier testimony that he was unable to run, and defendant testified, "Well, when you're on an extremely powerful hallucinogen and your adrenal glands are pumping at a high amount, pain isn't really something you feel." The prosecutor asked, "So if you were under the influence of something, you may be able to run?" and defendant replied, "I suppose." Defendant denied, however, that marijuana was powerful enough to enable him to run. He also testified that, during the incident with the police, he only ran about four feet before being hit with a taser.

Defendant argues that this evidence was not relevant because he was not qualified as an expert and his experience with LSD was not probative of how marijuana would affect him or OW. He also argues that the evidence was unfairly prejudicial. We agree that this incident lacked probative value for the initial purpose urged by the prosecutor. Defendant's experience with LSD had no bearing on his opinion that OW could not have taken 20 hits of marijuana from the nectar collector.[8] That an aspect of defendant's testimony eventually proved minimally relevant for a separate noncharacter purpose, rebutting defense testimony that defendant lacked the ability to run

---

[6] Earlier the prosecutor had specifically objected to defendant's testimony regarding the potential effect of using the nectar collector to consume marijuana on OW because defendant was unqualified to offer such an opinion. The trial court sustained the prosecutor's objection and struck defendant's testimony.

[7] Acid is a street-name for lysergic acid diethylamide (LSD).

[8] See footnote 7. It appears that the prosecutor's ultimate goal was to admit certain remarks defendant made while under the influence of LSD. A few questions later, defense counsel raised a second relevancy objection. The trial prosecutor responded, "I'll move on, Your Honor."

or sprint as testified to by MC,[9] does not override the substantial prejudice from portraying defendant as a drug abuser who commits crimes while under the influence. *Hawkins*, 245 Mich App at 448. Furthermore, defendant's unlawful consumption of an illegal controlled substance is markedly different than defendant's legal use of marijuana as a medical marijuana cardholder.

This is not a case in which the evidence was overwhelming. Compare *People v Johnson*, 497 Mich 1042 (2017). Although the jury found defendant guilty as to OW, it also concluded that he was not guilty as to MC. The jury's split verdict could indicate that the other-acts evidence we have addressed did not affect defendant's substantial rights or it could simply reflect a jury compromise. At its core, however, the trial as to OW was a credibility contest between her and defendant and his supporting witnesses. OW testified that defendant sexually touched her after providing her with marijuana. Defendant denied providing OW with marijuana and sexually touching her. OW's disclosure was delayed and the police found no evidence that defendant photographed OW as she had reported. If defendant's guilt depends on determining witness credibility and an error contributes to the jury's resolution of this credibility question, we are hard-pressed to conclude that the other-acts evidence did not affect defendant's substantial rights or the fairness of the judicial proceedings, especially given the long-standing rules controlling the admission of evidence concerning a defendant's prior arrest, conviction, and criminal history.[10] *Carines*, 460 Mich at 763, 774.

Reversed and remanded for further proceeding consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica

---

[9] The prosecutor referenced defendant's ability to run as described by MC, prefaced by "you heard him tell you yesterday that while he was on that acid trip of his he was running from the police, and he had to be tased."

[10] We decline to address defendant's additional claims in light of our decision.